**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2473**

STACY L. LEWIS,

        Plaintiff-Appellant,

    v.

NANCY A. BERRYHILL, ACTING COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant-Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Stephanie A. Gallagher, Magistrate Judge. (1:14-cv-03694-SAG)

Argued: January 24, 2017                  Decided: June 2, 2017

Before AGEE, KEENAN, and THACKER, Circuit Judges.

Vacated and remanded with instructions by published opinion. Judge Agee wrote the opinion, in which Judge Keenan and Judge Thacker joined.

**ARGUED:** Gregory Dolin, UNIVERSITY OF BALTIMORE SCHOOL OF LAW, Baltimore, Maryland, for Appellant. Jay C. Hinsley, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee. **ON BRIEF:** Meghan E. Ellis, Third Year Law Student, UNIVERSITY OF BALTIMORE SCHOOL OF LAW, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland; Aparna V. Srinivasan,

Special Assistant United States Attorney, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

———————

AGEE, Circuit Judge:

Stacy L. Lewis appeals the district court's decision upholding the Social Security Administration's denial of her application for disability insurance benefits and supplemental security income. Because the administrative law judge ("ALJ") did not give appropriate weight to the opinions of Lewis' treating physicians and failed to adequately explain his decision to deny her benefits, we vacate the judgment of the district court and remand for further proceedings.

I.

On October 4, 2010, Lewis filed applications for disability insurance benefits and supplemental security income with the Acting Social Security Commissioner (the "Commissioner"), alleging a disability beginning on March 9, 2009, due to obesity, degenerative disc disease, degenerative joint disease/thoracic outlet syndrome, diabetes mellitus, lupus, and depression with complaints of anxiety. Because the Commissioner denied Lewis' initial application and request for reconsideration, Lewis requested a hearing before an ALJ. The hearing was granted, but the ALJ denied Lewis' applications. Lewis then requested review by the Appeals Council, which was denied. At that point, the ALJ's decision became the final decision of the Commissioner.

Subsequently, Lewis filed a complaint in district court against the Commissioner pursuant to 42 U.S.C. § 405(g). Considering the parties' cross-motions for summary

3

judgment, a United States magistrate judge[1] issued a letter opinion observing that "Ms. Lewis is correct that, if the ALJ had credited her testimony, he likely would have concluded that she is unable to work." J.A. 15. Nevertheless, the magistrate judge ultimately denied Lewis' motion, granted the Commissioner's motion, and affirmed the Commissioner's final decision denying benefits.

Lewis timely appealed, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).

A.

To provide context for our consideration of this case, we begin with an overview of the sequential evaluation that ALJs must follow when making disability determinations. The relevant Social Security Administration regulations set forth a comprehensive five-step process:

> [T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden to make the requisite showing during the first four steps. *Monroe v. Colvin*, 826 F.3d 176, 179–80. (4th Cir. 2016). If the claimant

---

[1] The parties consented to trial by a magistrate judge. *See generally* Fed. R. Civ. P. 73.

4

fails to carry that burden at any step, she is determined not to be disabled. If the claimant does meet her burden of proof, the burden then shifts to the Commissioner at step five. *Id.* at 180. The Commissioner does not contest that Lewis met her burden as to steps one and two, so we focus on steps three through five as those are most relevant to the issues before us.

If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). That determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (internal quotations omitted); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. *See generally* 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." *Mascio*, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including

5

pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

After assessing the claimant's RFC, the ALJ continues with the fourth step, where the claimant must establish she is unable to perform past work. *Mascio*, 780 F.3d at 635. If she meets her burden as to past work, the ALJ proceeds to step five.

"At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Id.* (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* If the Commissioner meets this burden, the claimant is deemed not disabled and her benefits application is denied. *Id.*

B.

Following this regulatory assignment of the burden of proof and evidentiary standards, we summarize the evidence before the ALJ as it relates to this appeal, including

6

testimony and medical records, and then describe the ALJ's reasoning in denying Lewis benefits.

At the time of the ALJ hearing on August 22, 2013, Lewis was 38 years old. She testified that she has a B.S. in criminal justice and an employment history that included residential counselor at Maryland Sherriff's Youth Ranch, deli worker, and store clerk. She reported that she stopped working as a residential counselor on March 9, 2009, when she was slated to be switched to an afternoon shift that would have exacerbated her diabetes. She claims she has been unable to work since then because of her combined medical impairments.

Lewis reports a myriad of severe medical impairments, which include insulin-dependent diabetes, with no neuropathy or end-organ failure, as well as lupus for which she takes prednisone as she experiences symptom flares, though it has been in remission since August 2012. She has a bulge on one of her lumbar disks, which causes her to walk with a limp at times and to experience tingling and numbing down the back of her left leg. In addition, Lewis has autoimmune anemia, which is generally under control. She further experiences non-exertional pain in her left arm from thoracic outlet syndrome that causes her left hand to have tremors and to go numb. Lewis describes the pain as "stabbing, burning, tingling pain" and "throbbing pain" in her back, as well as pain that is "constant in [her] arm," and prevents her from sleeping at night. A.R. 56. She also has mental impairments, including depression and anxiety, for which she takes medication.

These severe medical impairments significantly limit her ability to do basic work activities. Lewis stated she can lift approximately five pounds with her left hand and fifteen

7

to twenty pounds with her right, but can sit for no more than thirty minutes before experiencing pain in her shoulder and the back of her neck. She has a driver's license and her own car, which she "can drive short distances, about five to 10 miles" at least five times per week, but she can only go grocery shopping with assistance. A.R. 52.

In addition to Lewis' testimony, the ALJ called a vocational expert ("VE") to testify at the administrative hearing. In questioning the VE, the ALJ described a hypothetical individual possessing the same limitations as Lewis. The VE testified that such a hypothetical person could not perform any of Lewis' past relevant work. However, the VE testified that there were jobs in the national economy that such a person could perform and specifically identified jobs of call-out operator, surveillance monitor, and charge account clerk.

When questioned by Lewis' attorney, the VE testified that if the hypothetical person needed to walk away from her work station and be off task for more than ten percent of the time then she would not be able to maintain employment. The ALJ then inquired as to whether a hypothetical person could maintain employment if they had Lewis' ailments and must rest ten minutes every two hours. The VE stated that under those circumstances the hypothetical individual would not be able to maintain employment.

C.

In addition to the testimonial evidence, the administrative record contains medical records from several of Lewis' treating physicians, including Dr. Shahid Mahmood, who has treated Lewis since 2009. Dr. Mahmood's medical opinion noted that Lewis could sit for up to two hours and stand/walk for three hours in a normal competitive work

8

environment. He further opined that she can rarely lift ten pounds, that her condition impairs her ability to keep her neck in a constant position, that she cannot push/pull, can tolerate only low stress work, and would need to be absent from work three times per month. Dr. Mahmood further stated that the diagnosis and prognosis of Lewis' pain is unknown, that she reports her pain as ten out of ten, and that she is not a malingerer. Dr. Mahmood also noted that she was taking medications that included Lidoderm Patches, Fentanyl Patches, and Oxycodone. [2]

Evidence from Lewis' treating rheumatologist, Dr. Ashok Jacob, is also in the administrative record. Dr. Jacob noted Lewis has bilateral arthritis in her hands, wrists, and shoulders; pericarditis; pleuritic, hemolytic anemia/leukopenia; and systemic lupus. He noted she can sit for two hours and stand/walk for up to one hour in a competitive work environment, and she can occasionally lift or carry up to five pounds, but she experiences constant pain that interferes with her attention and concentration. He further stated that she is incapable of performing even low stress jobs, as "stress increases frequency of flares." A.R. 924. Dr. Jacob noted Lewis would need to be absent from work more than three times per month, but is not a malingerer, and she "will experience severe pain, swelling, stiffness and fatigue throughout her body making daily functions very difficult for the rest of her lifetime." A.R. 925.

---

[2] Lewis also underwent numerous tests including X-Rays, MRIs, EMGs in an attempt to identify the cause of her pain. Although these diagnostic procedures did not conclusively establish the cause of her upper extremity pain, none of those tests proved to be normal.

Lewis underwent additional examinations with State agency medical and psychological consultants, who concluded that she was limited to light work activity with postural, manipulative, environmental, and mental restrictions.

D.

The ALJ's decision was issued in August 2013 and determined that Lewis was not disabled during the relevant period. The ALJ found that Lewis met her burden at step one to show she had not been working since the onset of the disability. At step two, he found that Lewis had the following severe, medically determinable impairments: obesity, degenerative disc disease, degenerative joint disease/thoracic outlet syndrome, diabetes mellitus, lupus, and depression with complaints of anxiety.

At step three, the ALJ determined that none of Lewis' impairments, alone or in combination, met or medically equaled any of the listed impairments. The ALJ then assessed Lewis' RFC and determined she could perform "light work," except that—

> [T]he claimant can lift 10 pounds frequently and 20 occasionally with her dominant right upper extremity, but she can lift five pounds frequently and 10 occasionally with her non-dominant left upper extremity. The claimant can push and pull with her bilateral upper extremities five pounds frequently and 10 occasionally. The claimant is limited to jobs with no overhead work with her left arm, and her reaching ability with left arm, both laterally and in front, is limited to occasionally. Furthermore, she is limited to no more than occasional fine and gross dexterity with the left arm and hand. Ms. Lewis is limited to work in an inside environment without excessive heat, cold, or humidity. She requires jobs that allow her to change positions once per hour. Finally, Ms. Lewis is limited to simple routine tasks, with positions that allow her to be off task about 5% of the time, rest for 10 minutes every two hours, and miss eight days of work per year.

10

A.R. 23. This assessment conflicted with Lewis' testimony regarding her symptoms and resulting functional limitations. While the ALJ found Lewis' claimed symptoms reasonably could be expected to be caused by her impairments, the ALJ nevertheless determined that Lewis' "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" because "[the] objective findings of the claimant's treating and examining sources do not support the severity of assessed restrictions that Ms. Lewis has alleged." A.R. 25, 28.

The ALJ's analysis regarding Lewis' chronic pain in her upper left extremity bears particular relevance to the issues on appeal. As to that impairment, the ALJ stated:

> [T]he medical evidence documents the claimant's long history of shoulder and upper extremity pain. Ms. Lewis has undergone several surgical procedures in the course of her treatment regimen including a carpal tunnel release, left de Quervain tenosynovitis release, and decompression of the left ulnar nerve at the cubital tunnel. In late 2011, the claimant underwent several procedures to treat thoracic outlet syndrome, including a left first rib resection. In early 2012, she was diagnosed with lupus and prescribed anti-inflammatory medications to control the acute symptoms. However, the record reflects that the claimant recovered from her procedures without incident or acute complication. The claimant testified that her lupus has been in remission since August of 2012. Follow-up physical examinations noted ongoing complaints of pain; however, there was 5/5 muscle strength in all major muscle groups, normal sensation and reflexes, and no evidence of acute range of motion irregularities.
>
> ***
>
> The State agency consultants concluded that the claimant is limited to light work activity with postural, manipulative, environmental, and mental restrictions. The undersigned gives these opinions limited weight, because the longitudinal record supports additional exertional and non-exertional restrictions.
>
> ***
>
> [The ALJ then summarized the findings of Dr. Mahmood and Dr. Jacob described above.] The undersigned gives these opinions partial weight,

11

because the severity of assessed exertional and non-exertional limitations is not entirely consistent with the longitudinal conservative treatment record, the documented clinical and examination findings, and Ms. Lewis' stated ongoing capabilities.

A.R. 28–29. With regard to the functional limits resulting from Lewis' obesity, degenerative disc disease, diabetes mellitus, lupus, and depression/anxiety, the ALJ found that they were consistent with her RFC.

At step four, taking into account Lewis' RFC, the ALJ determined she was unable to perform her past work. However, relying on the testimony of the VE, the ALJ found that jobs did exist in the national economy for a person with Lewis' age, education, work experience, and RFC. Accordingly, the ALJ concluded that Lewis was not disabled and denied her application for benefits.

## II.

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012).

On appeal, Lewis contends the ALJ failed to satisfactorily explain his decision not to credit her subjective complaints of chronic, non-exertional pain in her upper left extremity. Disputes over the role of subjective evidence in proving pain are nothing new.

12

"This circuit has battled the [Commissioner] for many years over how to evaluate a disability claimant's subjective complaints of pain." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994) (Hall, J., concurring). Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. *Id.* §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Id.* §§ 404.1529(c), 416.929(c). The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects. *Id.* §§ 404.1529(c)(4), 416.929(c)(4).

The parties agree that the ALJ properly found that Lewis met the requirements of the first step in the analysis, i.e. that Lewis' medically determinable impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* §§ 404.1529(b), 416.929(b). They diverge, however, as to the second step of the analysis. Lewis contends the ALJ erred at the second step when it concluded her "statements concerning the intensity, persistence, and limiting effects of these symptoms [we]re not entirely credible." A.R. 25. Lewis urges us to find the ALJ's conclusion on the second prong of the analysis was error because it misapprehended the objective medical evidence, failed to give appropriate weight to the medical opinions of her treating physicians, improperly concluded that her course of treatment was "conservative," and improperly

13

assessed her ability to perform limited household chores as evidence of non-impairment. We address these arguments in turn.

A.

First, Lewis contends the ALJ improperly discounted her subjective evidence of pain based solely on the lack of objective evidence of pain intensity. According to the regulations, the ALJ "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Thus, Lewis' subjective evidence of pain intensity cannot be discounted solely based on objective medical findings. *See id.* §§ 404.1529(c)(2), 416.929(c)(2).

Moreover, the ALJ failed to explain in his decision what statements by Lewis undercut her subjective evidence of pain intensity as limiting her functional capacity. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."); *see also* SSR 96-8p, 1996 WL 374184, at *7 (explaining that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). Accordingly, we find the ALJ's determination that objective medical

14

evidence was required to support Lewis' evidence of pain intensity improperly increased her burden of proof. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

B.

We turn next to Lewis' argument that the ALJ improperly discredited the opinions of her treating physicians, which Lewis maintains corroborate her subjective complaints of pain.

Pursuant to the regulations:

Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in [20 C.F.R. § 404.1529(c)(4) and § 416.929(c)(4)] in reaching a conclusion as to whether you are disabled.

*Id.* §§ 404.1529(c)(3), 916.929(c)(3). And treating physicians are given "more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[.]" *Id.* §§ 404.1527(c)(2), 416.927(c)(2). "When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source." *Id.* §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). Accordingly, the ALJ is required to give "controlling weight" to opinions proffered by a claimant's treating physicians so long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

15

with the other substantial evidence in [the claimant's] case record[.]" *Id.* §§ 404.1527(c)(2), 416.927(c)(2).

Lewis provided medical records containing opinions from two of her treating physicians, including her treating rheumatologist, Dr. Jacob. He opined that Lewis' pain constantly interfered with attention and concentration, she was precluded from lifting more than five pounds of weight and was incapable of even low stress jobs. Indeed, Dr. Jacob noted in Lewis' medical chart that she "will experience severe pain, swelling, stiffness, and fatigue throughout her entire body making daily functions very difficult for the rest of her lifetime." A.R. 925. The ALJ gave short shrift to Dr. Jacob's opinion, but also discounted the opinion of Lewis' primary treating physician, Dr. Mahmood, who treated Lewis for four years essentially on a bi-weekly basis. Dr. Mahmood opined that Lewis cannot sit for more than two hours, stand/walk for more than three hours, and has significant limitations in tasks such as handling, reaching, fingering, lifting, and keeping her neck in a constant position. He marked her pain as seven of ten on a ten point scale.

The ALJ failed to adequately explain why he failed to give the opinions of Lewis' treating physicians "controlling weight" under 20 C.F.R. § 404.1527(c)(2) and § 416.927(c)(2). In contrast to Lewis' well-documented medical history, the ALJ's rejection of Lewis' treating physician sources is perfunctory. The ALJ points to nothing in the record indicating that any non-treating sources disputed that the medical opinions of Drs. Jacob and Mahmood were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Indeed, the ALJ's analysis spans only four lines and overlooks critical aspects of Lewis' medical

16

treatment history. For instance, the ALJ fails to note that neither of Lewis' treating physicians suspected her of exaggerating her symptoms and that she endured various adjustments to her medications as they lost effectiveness over time (without any evidence of drug-seeking behavior). The ALJ's cursory analysis overlooks Dr. Jacob's and Dr. Mahmood's consistent medical conclusions about Lewis' limited abilities to stand, sit, lift, grip, or perform other manual tasks. Accordingly, the ALJ's analysis has impermissible gaps when describing the opinions of Lewis' treating physician and her overarching medical history.

Furthermore, the opinions of outside physicians hired to evaluate Lewis' medical records bolster the opinions of the treating physicians, yet the ALJ ignored their conclusions. Those non-treating sources concluded that Lewis' "statements about the intensity, persistence, and functionally limiting effects of [the] symptoms" were "substantiated by the objective medical evidence alone." A.R. 74. Indeed, all of the medical professionals who examined Lewis provided opinions consistent with her treating physicians that Lewis suffers from "significant, persistent, and very debilitating pain in her neck and upper extremity." *E.g.*, A.R. 604.

To the extent the ALJ suggests Lewis is malingering, that conclusion is directly contradicted by the record. Both of Lewis' treating physicians (Dr. Mahmood and Dr. Jacobs) opined that there was no suggestion of malingering or exaggeration of pain. Further, the Commissioner's own medical expert specifically noted that Lewis' "[c]redibility is full." A.R. 90. And Lewis' subjective reports of pain are consistent throughout the record—she reports on numerous medical reports severe pain at a ten out

of ten level that is disabling. In short, the ALJ inappropriately substituted a subjective decision for that of the overwhelming medical evidence in this case by opining that Lewis over-reported her pain. The ALJ offered no record evidence supporting that conclusion. Our examination of the record makes clear that the ALJ's conclusions do not fully account for the characteristics of Lewis' ailments and symptoms regarding pain.[3]

In sum, the ALJ erred by failing to appreciate the consistent prognosis of Lewis' treating physicians in contravention of the mandate that "controlling weight" be accorded to such opinions. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ's failure to "build an accurate and logical bridge from the evidence to his conclusion" constitutes reversible error. *Monroe*, 826 F.3d at 189; *accord id.* at 191 (rejecting cursory analysis of the ALJ as to whether there existed objective evidence of medical impairment that precluded "meaningful substantial-evidence review").

## C.

Turning to Lewis' third argument, she maintains the ALJ mischaracterized her treatment record as "conservative." We agree the ALJ's determination in this regard is difficult to reconcile with the record. Lewis has a documented and exhaustive medical history, which includes degenerative changes in her spine, a sclerotic lesion centered in the

---

[3] The ALJ points to Lewis' ability to perform incremental activities interrupted by periods of rest, such as "driv[ing] short distances of up to 30 miles, shop for groceries with the assistance of her mother or roommate, handle her finances, and watch television." A.R. 24–25. The ALJ's conclusion that Lewis' activities demonstrate she is capable of work is unsupported by the record. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

18

left humeral metadiaphysis, lupus with corresponding symptoms, spinal stenosis, and injury to her brachial plexus and corresponding nerve damage. Dr. Jacob's assessment of Lewis' functional impairment, along with Lewis' subjective complaints of pain, are consistent with Lewis' numerous ailments.

Lewis' multiple medical conditions require her to take powerful analgesics, including Fentanyl and Oxycodone. Furthermore, Lewis endured multiple surgeries, one of which required removal of her first left rib to alleviate pain. Before those surgeries, Lewis underwent a lumbar epidural injection, two supraspinatus nerve blocks, and a radiofrequency ablation of her supraspinatus nerve. In light of the extensive treatment Lewis received for her various conditions, the ALJ's designation of Lewis' course of treatment as "conservative" amounts to improperly "playing doctor" in contravention of the requirements of applicable regulations. 20 C.F.R. §§ 404.1529, 416.929; *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) ("The ALJ's conclusion is not supported by any medical evidence in the record; it amounts to the ALJ improperly 'playing doctor.'").

## D.

As for the Commissioner's arguments, she hones in on two "objective" findings that purportedly support the ALJ's conclusion. First, she focuses on the MRI and EMG studies that, although not "normal," did not show substantial abnormalities. Second, the Commissioner cites to several examinations which "demonstrated normal muscle tone, normal gait with no deviation or assistive devices; and 5/5 muscle strength testing in all major muscle groups of upper and lower extremities[.]" Resp. Br. 35. These medical

19

records "reflect[] the breadth of evidence considered and discussed by the ALJ," according to the Commissioner. Resp. Br. 35. We are not persuaded.

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). In the same medical records containing the "normal" findings relied upon by the ALJ, the physician also noted that Lewis presented with "stabbing, burning throbbing and tingling, constant pain that increases with elevating the hand above the shoulder and decreases by rest. . . . [n]eck pain is really bothering her today," A.R. 936; that a left shoulder MRI "showed scelerotic [sic] lesion," A.R. 939; and that Lewis indicated "left shoulder pain with marked discomfort on [range of motion] . . . with pain on shoulder abduction and extension of arm," A.R. 939. And Lewis was given a steroid injection into her shoulder at the conclusion of the appointment.

Furthermore, the ALJ did not indicate how the results he cited were relevant to the functional limitations Lewis suffered as a result of her chronic, non-exertional pain in her left shoulder. *See Monroe*, 826 F.3d at 190 ("In citing 'normal' results from pulmonary and respiratory tests and an EEG, the ALJ did not explain why he believed these results had any relevance to the question of what symptoms Monroe suffered from narcolepsy."). The ALJ does not explain, for instance, how Lewis' normal gait bears any nexus to her complaint of chronic shoulder pain.

Lastly, the Commissioner relies on our decision in *Gross v. Heckler*, 785 F.2d 1163 (4th Cir. 1986), in which we stated "subjective evidence of pain cannot take precedence

over objective medical evidence or the lack thereof." *Id.* at 1166. In that case, however, the claimant complained of chest pain without any medically acceptable evidence demonstrating an "anatomical, physiological, or psychological abnormalit[y]" that could cause such pain. *Id.* Lewis' circumstances are quite different from those of the claimant in *Gross*. In contrast to the claimant in *Gross*, the ALJ here did find that Lewis' pain does "result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Lewis does not argue her subjective claims of the existence of pain take precedence over objective medical evidence, but rather that she not be required to meet an additional burden of proffering objective evidence of the intensity of her pain. *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) ("Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that his pain is so continuous and/or so severe that it prevents him from working a full eight hour day." (footnote omitted)).

\* \* \*

In conclusion, we do not reflexively rubber-stamp an ALJ's findings. *See id.* at 566 ("The deference accorded an ALJ's findings of fact does not mean that we credit even those findings contradicted by undisputed evidence."). The ALJ's decision applied an improper legal standard to discredit Lewis' evidence of pain intensity and the opinions of her treating physicians. Further, the ALJ failed to adequately explain the reasons for denying Lewis benefits given her extensive medical history, thus precluding our ability to undertake the

21

"meaningful review" with which we are tasked on appeal. *Radford*, 734 F.3d at 296. Given the complexity of the record, we decline to apply these principles in the first instance and remand accordingly. *See id.*

## III.

For the reasons set forth, the judgment is vacated and this case is remanded with instructions that the district court remand the case for further proceedings before the agency.

*VACATED AND REMANDED*
*WITH INSTRUCTIONS*