**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1511**

HAROLD L. KISER,

                Plaintiff - Appellant,

      v.

ANDREW SAUL, Commissioner of Social Security,

                Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:17-cv-00739-FDW)

Submitted: June 1, 2020                         Decided: July 30, 2020

Before WILKINSON and FLOYD, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Reversed and remanded by unpublished opinion. Judge Floyd wrote the opinion in which Judge Wilkinson joined. Judge Traxler wrote a separate dissenting opinion.

George C. Piemonte, Charlotte, North Carolina, Denise A. Sarnoff, MARTIN, JONES, & PIEMONTE, Decatur, Georgia, for Appellant. R. Andrew Murray, United States Attorney, Charlotte, North Carolina, Gill P. Beck, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina; Stephen Dmetruk, Special Assistant United States Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Seattle, Washington, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

FLOYD, Circuit Judge:

This appeal follows an action for review of a final decision of Defendant-Appellee Andrew Saul, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff-Appellant Harold L. Kiser's application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act") and supplemental security income under Title XVI of the Act. The sole issue on appeal is whether the Administrative Law Judge (ALJ), in finding that Kiser *was not* disabled, afforded proper weight to an earlier decision by the North Carolina Department of Health and Human Services (NCDHHS) finding that Kiser *was* disabled (the "Medicaid Decision"). For the reasons that follow, we hold that the ALJ did not. Accordingly, we reverse the district court's judgment and remand with instructions to vacate the denial of benefits and remand for further administrative proceedings.

I.

Before turning to the facts of Mr. Kiser's case, we outline the approach that the Commissioner takes to evaluating social security disability claims.

In evaluating whether an individual is disabled, the Commissioner uses a five-step process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, an ALJ evaluates, in sequence, whether the claimant: "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if

2

not, could perform any other work in the national economy." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)).

Importantly, at step three, if a claimant fails to demonstrate that they have a disability that meets or medically equals a listed impairment, the ALJ must assess the claimant's residual functional capacity (RFC) before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]." *Lewis v. Berryhill*, 858 F.3d 858, 861–62 (4th Cir. 2017) (alterations in original) (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). An ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* (quoting SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996)); *see also* 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

For the first four steps, the claimant has the burden of production. *Monroe v. Colvin*, 826 F.3d 176, 179–80 (4th Cir. 2016). "If the claimant fails to carry that burden at any step, she is determined not to be disabled." *Lewis*, 858 F.3d at 861. "If the claimant does meet her burden of proof, the burden then shifts to the Commissioner at step five." *Id.* If a determination of disability can be made at any step, then the ALJ need not analyze subsequent steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

## II.

Mr. Kiser is a fifty-three-year-old male who suffers from a plethora of ailments. In July 2009, he was hospitalized for multiple conditions, including respiratory failure, renal

failure, and pancreatitis, and he fell into a prolonged coma. In December 2009, he applied for supplemental security income, alleging that he became disabled as of the July 2009 hospitalization. On December 1, 2011, for reasons that are not germane to the current appeal, an ALJ denied Kiser's claim. On October 26, 2012, the Appeals Council denied Kiser's request for review of the ALJ's decision.

A.

In February 2013, Kiser applied for Medicaid benefits in North Carolina. His application was initially denied, so he appealed to the NCDHHS. On August 14, 2013, applying the same five-step test employed for social security disability benefits discussed above, the NCDHHS issued the Medicaid Decision finding that Kiser was disabled and therefore eligible for Medicaid benefits. Importantly, at step three, the NCDHHS found that Kiser "equal[ed] the disability requirement referenced in 20 [C.F.R. §] 416. 920(d), Appendix 1, Listing 12.05C, which directs a finding of disabled." Administrative Record (A.R.) 341.

4

At the relevant time,[1] Listing 12.05 provided the listed impairment for an intellectual disability.[2] *See* 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 12.05 (effective January 2, 2015). Listing 12.05(C) had three prongs. *See Hancock*, 667 F.3d at 473 (discussing Listing 12.05(C)). First, it required a showing of "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" (Prong 1). 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 12.05. It also required a "valid verbal, performance, or full scale IQ of 60 through 70" (Prong 2) and "a physical or other mental impairment imposing an additional and significant work-related limitation of function" (Prong 3). *Id.* Listing 12.05(C).

---

[1] The Commissioner revised the listings regarding mental disorders effective January 17, 2017, to reflect, among other things, "advances in medical knowledge." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138, 66,138 (Sept. 26, 2016). However, the version of the listings in effect as of the date of the Commissioner's final decision controls. *See id.* at 66,138 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). As discussed below, because the Appeals Council denied Kiser's request for review, the ALJ's decision is the final decision, and we consider Listing 12.05(C) as it existed before it was overhauled. *See* 20 CFR § 404.900(a)(4)–(5); *Sims v. Apfel*, 530 U.S. 103, 107 (2000) ("[I]f, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision.").

[2] Listing 12.05 has had a change in nomenclature over the years. At the time of the Medicaid Decision, Listing 12.05 provided the listed impairment for "mental retardation." Effective September 3, 2013, the Social Security Administration replaced the term mental retardation with the term intellectual disability. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499 (Aug. 1, 2013). The change was merely a change in form, not substance, and "d[id] not affect how [the Social Security Administration] evaluate[s] a claim based on 'intellectual disability' under listing 12.05." *Id.* at 46,500. The current version of Listing 12.05 uses the term "intellectual disorder." However, to avoid confusion, we will use the nomenclature as existed at the time of the ALJ's decision, namely "intellectual disability."

B.

In December 2012, before the Medicaid Decision, Kiser again applied for supplemental security income—this time also applying for disability insurance benefits and a period of disability. A.R. 34. Kiser claimed disability based on memory loss, prostate cancer, arthritis, obstructive sleep apnea, hypertension, diabetes, renal failure, pneumonia, and pancreatitis. A.R. 295.

Kiser's claim was initially denied and denied again upon reconsideration. Kiser filed a request for rehearing, and an ALJ held a video hearing on September 8, 2014. In a written decision issued on May 7, 2015, the ALJ employed the five-step sequential evaluation.[3] At step one, the ALJ found that Kiser had not engaged in substantial gainful activity since July 21, 2009. At step two, the ALJ found that Kiser had the following severe impairments that "more than minimally limit [his] ability to perform basic work activities": prostate cancer, urinary tract disorder, degenerative disc disease, and an organic mental disorder. A.R. 37–38.

At step three, the ALJ found that Kiser's impairments did not, individually or in combination, meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. As to Kiser's claimed mental impairments, the ALJ held that they did not "meet or medically equal the criteria of listing 12.02, or any other listing." A.R. 40. In particular, the ALJ considered whether Listing 12.02 (the listing for "Organic Mental

---

[3] As discussed above, on December 1, 2011, a prior ALJ denied Kiser's previous application for supplemental security income. Therefore, even though Kiser claimed in his current application a disability onset date of July 21, 2009, the ALJ held that Kiser's disability claim from July 21, 2009 to December 1, 2011 was barred under the doctrine of res judicata.

6

Disorders") was satisfied and held that the requirements set forth in paragraph (B) of that listing were not met. Paragraph (B) of Listing 12.02 required at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. As to restriction of activities of daily living, the ALJ found that Kiser had a mild (i.e., not marked) restriction. As to social functioning and issues with concentration, persistence, or pace, the ALJ said that Kiser had only moderate (again, not marked) difficulties. And the ALJ found no evidence of repeated episodes of decompensation of extended duration. Consequently, the ALJ found that Listing 12.02 was not met or medically equaled.[4] After considering the whole record, the ALJ held that Kiser had the RFC to perform a reduced range of only sedentary work.

In analyzing step three, the ALJ mentioned briefly the Medicaid Decision and that Kiser had been found disabled under the listing for intellectual disabilities, Listing 12.05(C). A.R. 48. But the ALJ gave "[t]his opinion . . . minimal weight" and stated that it was "not binding on our agency." A.R. 48. According to the ALJ, the record before him did not support the Medicaid Decision. First, the ALJ stated that Kiser had reported on multiple occasions that he performs his daily activities independently, indicating only mild limitations in that area. Second, the ALJ reasoned that Kiser's history of memory impairment supported only a moderate limitation in his concentration, persistence, and

---

[4] The ALJ also briefly considered whether Listing 12.02(C) was met. However, the ALJ quickly reasoned it was not.

7

pace.  Lastly, the ALJ said that he found the opinions of the "State agency medical and psychological experts to be more accurate and persuasive."  A.R. 48.

Turning to step four, the ALJ held that Kiser was unable to perform any of his past relevant work (e.g., auto mechanic, electrician's helper, or construction worker).  Finally, as to step five, the ALJ found that considering Kiser's RFC, Kiser could perform representative occupations such as document preparer/scanner, final assembler of optical goods, or an addresser.  Therefore, the ALJ found that Kiser was not disabled and denied his application.

On October 27, 2017, the Appeals Council denied Kiser's request for review of the ALJ's decision.

C.

On July 6, 2018, Kiser filed a complaint in the United States District Court for the Western District of North Carolina seeking judicial review of the ALJ's decision.

Presented with cross-motions for summary judgment, the district court awarded summary judgment to the Commissioner and affirmed the ALJ's decision.  Importantly, with regard to how the ALJ treated the Medicaid Decision, the district court held that the ALJ provided "persuasive, specific, and valid reasons" for affording the Medicaid Decision less than substantial weight.  *Kiser v. Berryhill*, No. 3:17-CV-00739-FDW, 2019 WL 1173376, at *4 (W.D.N.C. Mar. 13, 2019) (quoting *Woods v. Berryhill*, 888 F.3d 686, 692 (4th Cir. 2018)).  In explaining why the ALJ properly considered Listing 12.02, rather than 12.05, the district court stated that the "ALJ reasonably believed the evidence contained in

8

the record more appropriately supported evaluating for an organic mental disorder under Listing 12.02." *Id.* Furthermore, the district court observed that Kiser "raise[d] no arguments for why Listing 12.05 was implicated by his impairments." *Id.* Therefore, the district court held that the ALJ's decision to afford the Medicaid Decision less than substantial weight was proper.

Kiser timely appealed to this Court.


III.

We review the district court's decision de novo, and we will affirm the ALJ's disability determination if the ALJ has applied the "correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020) (quoting *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)).

In this appeal we are presented with a single issue: whether the ALJ properly afforded less than substantial weight to the Medicaid Decision.

Although a "disability decision by another entity does not bind the SSA," *Woods*, 888 F.3d at 691, the "default rule" is that an ALJ must give "substantial weight" to another agency's decision, *id.* at 692. In *Woods*, this Court held that an ALJ must give "substantial weight" to a disability decision by the NCDHHS because both NCDHHS and Social Security disability insurance benefits "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability" and because NCDHHS's provision of Medicaid is for those who are considered disabled for social security purposes. *Id.* (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012)).

9

Per *Woods,* an ALJ may afford another agency's disability determination less than substantial weight only if the ALJ provides "persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)). For example, an "ALJ could explain which aspects of the prior agency decision he finds not credible and why, describe why he finds other evidence more credible, and discuss the effect of any new evidence made available after NCDHHS issued its decision." *Id.* Without such explanation by the ALJ, a reviewing court "cannot engage in meaningful review." *Id.* at 693.

Here, we are convinced that the ALJ failed to provide "persuasive, specific, [and] valid" reasons why he afforded less than substantial weight to the Medicaid Decision. *Id.* at 692. This is because the ALJ failed to consider whether the three prongs of Listing 12.05(C) were met or medically equaled; instead, the ALJ only analyzed the requirements of Listing 12.02. In explaining why he was affording the Medicaid Decision minimal weight, the ALJ stated that Kiser only had a mild impairment in performing his daily activities independently, and a moderate memory impairment that affects his concentration, persistence, and pace. However, these reasons pertain to the requirements of Listing 12.02(B), which require two of the four listed conditions, such as "[m]arked restriction of activities of daily living" (Listing 12.02(B)(1)) and "marked difficulties in maintaining concentration, persistence, or pace" (Listing 12.02(B)(3)). The Medicaid Decision, however, found that Kiser's condition medically equaled Listing 12.05(C), not Listing 12.02. Simply put, the ALJ failed to analyze whether Kiser met or medically equaled Listing 12.05(C). As a result, the reasons the ALJ proffered for affording minimal weight

10

to the Medicaid Decision were non-responsive to the reasons why the NCDHHS found Kiser disabled.

Indeed, based on the record, it appears that Listing 12.05(C) was the appropriate listing for analyzing Kiser's cognitive impairments. For example, recall that prong two of Listing 12.05(C) required a "valid verbal, performance, or full-scale IQ of 60 through 70." As the December 1, 2011 ALJ decision and Medicaid Decision outlined, intelligence testing performed in 2010 after Kiser's 2009 hospitalization yielded verbal, performance, and full-scale IQ scores of 66, 69, and 65, respectively. A.R. 101, 340. These scores would place Kiser squarely within the 60–70 IQ score range, thus satisfying prong two.

Given that the ALJ failed to address whether Kiser met or medically equaled the requirements of Listing 12.05(C), the ALJ's reasons for not giving substantial weight to the Medicaid Decision were non-responsive and, therefore, were neither persuasive, specific, nor valid. For that reason, we vacate and remand for further consideration.[5]

---

[5] As discussed *supra* note 2, effective January 17, 2017, the Commissioner significantly altered the listings for mental disorders and, among other things, removed Listing 12.05(C). In amending the listings, the Commissioner stated that "[i]f a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand." 81 Fed. Reg. at 66,138 n.1. Thus, according to the Commissioner, on remand an ALJ will apply the revised listings, not Listing 12.05(C). *Id.* Though application of the revised listings, as proposed by the Commissioner, may generate retroactivity concerns, we do not reach that issue here, as it would be premature to do so.

11

IV.

For the foregoing reasons, we reverse the district court's judgment and remand with instructions to vacate the denial of benefits and remand for further administrative proceedings.

*REVERSED AND REMANDED*

TRAXLER, Senior Judge, dissenting:

The majority concludes that the ALJ failed to adequately explain why he gave minimal weight to the Medicaid Decision finding Kiser's condition equaled the impairment in Listing 12.05, and the majority reverses the district court's order and directs the case be returned to the ALJ for reconsideration. In my view, the ALJ sufficiently explained why he gave minimal weight to the Medicaid Decision, and substantial evidence supports the ALJ's denial of benefits. Because I would affirm the judgment of the district court, which in turn affirmed the judgment of the ALJ, I respectfully dissent.

I.

While Kiser's claim for Social Security disability benefits and supplemental security income was pending, a North Carolina state agency determined that Kiser was disabled and therefore qualified for Medicaid benefits. The Medicaid Decision determined that Kiser qualified for Medicaid because his impairments medically equaled the severity of the intellectual disability impairment of Listing 12.05(C).

Although the Medicaid Decision is not binding on the ALJ, *see* 20 C.F.R. § 404.1504, the general rule is that an ALJ considering a disability claim must give substantial weight to a state-agency's disability finding. *See Woods v. Berryhill*, 888 F.3d 686, 692 (4th Cir. 2018). The ALJ "may deviate from this default rule and accord [the] disability decision less than substantial weight if the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.* (internal quotation marks omitted). "[I]n order to demonstrate that it is appropriate to accord less than substantial weight to [the] disability decision, an ALJ must give persuasive, specific, valid reasons for doing so

13

that are supported by the record." *Id.* (internal quotation marks omitted).  To provide a

valid reason for rejecting a state-agency finding, "an ALJ could explain which aspects of

the prior agency decision he finds not credible and why, describe why he finds other

evidence more credible, and discuss the effect of any new evidence. . . . This list is not

exclusive, but the point of this requirement—and of these examples—is that the ALJ  must

adequately explain his reasoning; otherwise, we cannot engage in a meaningful review."

*Id.* at 692-93.

## A.

In this case, the ALJ gave minimal weight to the Medicaid Decision's disability

finding.  The ALJ explained that

> the record before me does not support [the finding of disability].  The
> claimant has reported on multiple occasions that he performs his activities of
> daily [living] independently, indicating only mild limitations in that area.
> Furthermore, the claimant's history of memory impairment supports only
> moderate limitations in the claimant's concentration, persistence, and pace
> and does not rise to listing severity.  I find the opinions of the State agency
> medical and psychological experts to be more accurate and persuasive.

A.R. 48 (citations omitted).

While the ALJ's discussion may be somewhat abbreviated,[1] I believe it nonetheless

provides a sufficiently persuasive, specific, and valid explanation to require affirmance.

The Medicaid Decision found that Kiser's memory difficulties and reduced

intellectual functioning were severe impairments that significantly limited his ability to

---

[1] The ALJ also stated that the Medicaid Decision was based on different standards and was not binding on the ALJ.  As we explained in *Woods*, such generic objections to a state-agency finding do not amount to persuasive or specific reasons justifying a decision to give less than substantial weight to the finding.  *See Woods v. Berryhill*, 888 F.3d 686, 693 (4th Cir. 2018).

work and thus rendered him disabled. The ALJ gave those findings minimal weight because the record evidence the ALJ found credible did not support the conclusion that Kiser's limitations were severe. A conflict with record evidence is clearly a valid and persuasive reason to give minimal weight to the Medicaid Decision. *See Woods*, 888 F.3d at 692 (explaining that "an ALJ could explain which aspects of the prior agency decision he finds not credible and why, [and] describe why he finds other evidence more credible").

The ALJ pointed to specific areas where the record conflicted with the severe-impairment findings of the Medicaid Decision – Kiser was only mildly limited in his ability to independently perform his activities of daily living; Kiser had only moderate limitations in concentration, persistence, and pace; and the state-agency consultants found most credible by the ALJ determined that Kiser had mild memory and cognitive limitations. As to these points, the ALJ's view is supported by substantial evidence in the record.

Kiser was working full-time as a car mechanic until July 2009, when he was hospitalized and in a coma for a month. Kiser has suffered from memory loss and concentration problems since recovering from the coma. Kiser has been unable to return to his previous work. Medical records describe Kiser as presently suffering from "mild cognitive impairment" and "mild memory deficits." A.R. 591, 1011. The ALJ gave "great weight," A.R. 47, to the state agency's psychological consultants, who concluded that Kiser was not disabled. *See* A.R. 133, 151. Those consultants reported that Kiser had mild cognitive impairment that moderately limited his ability to maintain social functioning and to maintain concentration, persistence, and pace, but did not significantly limit his ability to, *inter alia*, understand and remember short, simple instructions; interact with peers or

15

co-workers; make simple, work-related decisions; or sustain an ordinary routine without special supervision. *See* A.R. 126, 130-31, 148-49. This evidence easily clears the substantial-evidence threshold and supports the ALJ's determination that Kiser suffered from mild cognitive impairment that did not prevent him from working sedentary jobs. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[T]he threshold for [substantial evidence] is not high. Substantial evidence . . . is more than a mere scintilla. It means -- and means only -- such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and internal quotation marks omitted). This same evidence also supports the ALJ's decision to reject the Medicaid Decision -- which found Kiser to be severely impaired --  as contrary to the record before the ALJ.

Kiser, however, contends that the factors listed by the ALJ are not relevant under Listing 12.05(C) and thus cannot constitute a valid reason to reject the Medicaid Decision. I disagree. The question before the ALJ was the weight to be given the Medicaid Decision's finding that Kiser's impairments *medically equaled* Listing 12.05(C). A listing is medically equaled when its criteria are not met, but an impairment is "*at least equal in severity* and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a) (emphasis added). Although the factors identified by the ALJ are not criteria under Listing 12.05, they nonetheless are relevant to determining the extent of Kiser's impairment, which is a necessary step when determining whether his impairments at least equaled the severity of Listing 12.05(C). The ALJ therefore did not err by considering evidence of the extent of Kiser's impairment in areas other than those set out in Listing 12.05(C). *See* 20 C.F.R. § 404.1526(c) ("When we determine if your impairment medically equals a listing, we

16

consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding.").

B.

To the extent Kiser now contends that the ALJ should have considered whether Kiser *met* (as opposed to *medically equaled*) the criteria of Listing 12.05(C),[2] I again disagree. Listing 12.05 governs claims of intellectual disability, a lifelong disability that involves low IQ along with adaptive deficits appearing before age 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05 (effective January 2, 2015). Listing 12.02 -- the Listing applied by the ALJ -- governs claims of disability because of a decline in cognitive function. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.02 (explaining that Listing 12.02 is used to evaluate an impairment causing an "abnormal mental state and loss of previously acquired functional abilities").

Although Kiser received low scores on IQ tests given through the years, he supported himself until 2009 by working as a heavy equipment operator, electrician's helper, groundskeeper, and car mechanic. As noted, he was working full time as a mechanic until July 2009, when he was hospitalized and in a coma for a month. In his 2012 application for disability benefits, Kiser asserted that he became disabled in July 2009, when he was hospitalized and in an extended coma. *See* A.R. 279. In a brief submitted to the ALJ in 2014, counsel for Kiser likewise focused on Kiser's memory loss

---

[2] As discussed above, the ALJ concluded that Kiser's impairments did not medically equal Listing 12.05(C) when he rejected the Medicaid Decision as contrary to the record.

following his hospitalization. *See* A.R. 346. Kiser never contended he was entitled to benefits because he met the criteria of Listing 12.05(C).[3]

Moreover, the mere existence of IQ scores in the range shown in this record does not, in and of itself, establish disability under Listing 12.05(C); there must also be evidence of adaptive deficits. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05 ("Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."); *id.* Listing 12.00(A) ("Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing."). Given Kiser's history of skilled work, the absence of any professional assessment concluding that Kiser met the criteria of Listing 12.05, and Kiser's failure to argue to the ALJ that he qualified as intellectually disabled under Listing 12.05(C), I do not believe the ALJ erred by evaluating Kiser's claim under Listing 12.02 rather than 12.05(C).

## II.

I believe substantial evidence supports the ALJ's determination that Kiser suffered from mild cognitive impairments that did not prevent him from working. The conclusion

---

[3] Indeed, when seeking review of the ALJ's decision by the Appeals Council, Kiser did not argue that the ALJ erred by not evaluating his claim under Listing 12.05(C).

of the Medicaid Decision that Kiser suffered from significant mental impairments that equaled the severity of Listing 12.05(C) was inconsistent with the ALJ's understanding of the record evidence, and that inconsistency provided a persuasive, specific, and valid reason for the ALJ to give minimal weight to the Medicaid Decision. Because the ALJ adequately explained his reasoning and his factual findings about the scope of Kiser's limitations are supported by substantial evidence, I would affirm the judgment of the district court, which in turn affirmed the judgment of the ALJ.

Accordingly, for the foregoing reasons, I respectfully dissent.