**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 17-1500**

BILLIE J. WOODS,

       Plaintiff - Appellant,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

       Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Max O. Cogburn, Jr., District Judge.  (1:16-cv-00058-MOC-DLH)

Argued:  March 20, 2018                            Decided:  April 26, 2018

Before MOTZ, TRAXLER, and DIAZ, Circuit Judges.

Vacated and remanded with instructions by published opinion.  Judge Motz wrote the opinion, in which Judge Traxler and Judge Diaz joined.

**ARGUED:** Charlotte W. Hall, CHARLES T. HALL LAW FIRM, P.C., Raleigh, North Carolina, for Appellant.  Leo Rufino Montenegro, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Leah F. Golshani, Special Assistant United States Attorney, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland; Jill Westmoreland Rose, United States Attorney, Gill Beck, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Billie Jean Woods appeals the Social Security Administration's denial of her application for disability insurance benefits. Because we conclude that the Administrative Law Judge erred by not according adequate weight to a prior disability determination by the North Carolina Department of Health and Human Services, we vacate and remand.

## I.

Before turning to the facts of this case, we set forth the framework that an Administrative Law Judge ("ALJ") must use to determine a claimant's eligibility for Social Security disability insurance benefits.

"Disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether an individual is disabled, ALJs use the "five-step sequential evaluation process" outlined in the Social Security Administration's ("SSA") regulations. 20 C.F.R. § 404.1520(a)(4). "[T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations . . . ." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *see* 20 C.F.R. § 404.1520(a)(4). If the ALJ cannot make a conclusive

2

determination at the end of the third step, the ALJ must then determine the claimant's residual function capacity, meaning the most a claimant can still do despite "all of the claimant's medically determinable impairments of which the ALJ is aware, including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (brackets and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1520(a)(4); 404.1545(a). Only once the ALJ has identified the claimant's "functional limitations or restrictions" and assessed the claimant's "work-related abilities on a function-by-function basis" may the ALJ express the claimant's residual function capacity "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996); *see* 20 C.F.R. § 404.1567 (defining exertional levels).

After the ALJ determines the claimant's residual function capacity, the ALJ proceeds to step four, where the claimant must show that she cannot perform her past work. 20 C.F.R. § 404.1520(a)(4). If the claimant makes that showing, the burden shifts to the SSA to prove at step five that the claimant is capable of performing other work, in light of her residual function capacity, age, education, and work experience, that "exists in significant numbers in the national economy." *Id.* §§ 404.1560(c); 404.1520(c). If the SSA satisfies that burden, the ALJ will find the claimant not disabled and deny her application for benefits. *See id.* § 404.1520(a)(4).

3

## II.

### A.

In the years leading up to her alleged disability onset date, Woods held various production and manufacturing jobs that required her to lift up to 50 pounds and to walk, stand, and crouch for seven hours or more per day. In 2010, Woods began exhibiting symptoms consistent with inflammatory arthritis, osteoarthritis, and fibromyalgia. She also began complaining of persistent pain that limited her ability to perform her job. Her symptoms progressed over the next three years, and in April 2013, Woods stopped working. The next month, Woods applied for Social Security disability insurance benefits.

The SSA initially denied her application and her petition for reconsideration. Woods then requested a hearing before an ALJ.

Before the ALJ, Woods presented medical records from Dr. Aasheim (her primary care physician), Dr. de Wit (her rheumatologist through January 2013), and a prior decision by the North Carolina Department of Health and Human Services ("NCDHHS") that found that Woods was disabled and entitled to Medicaid benefits. The ALJ also reviewed the opinions of Drs. Burgess and Pardoll, who conducted consultative examinations at NCDHHS's request, and Dr. Clayton, the state agency medical consultant who reviewed Woods's medical record but did not treat or examine her in person. In addition, Woods submitted disability questionnaires and testified before the ALJ.

We briefly summarize the relevant evidence from each source.

- Beginning in 2010, Drs. de Wit and Aasheim documented various symptoms consistent with inflammatory arthritis, osteoarthritis, and fibromyalgia. In early 2013, both doctors concluded that because of her condition, Woods "should not do heavy manual labor" as required by her current job. In November 2013, Dr. Aasheim concluded that Woods could occasionally lift up to ten pounds but frequently could not lift any weight, she could stand one of eight hours, could sit one of eight hours, and could occasionally balance independently, but could not climb, stoop, crouch, kneel, or crawl.

- The NCDHHS decision found that Woods was eligible to receive Medicaid. The state hearing officer noted that Woods had several positive laboratory results and physical exams that supported her claims of pain. That officer also found that Woods's testimony at the state hearing was "wholly credible and substantiated the alleged disabilities."

- Dr. Burgess, who conducted a physical consultation, concluded that Woods's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, pushing and pulling heavy objects . . . appears to be mildly to moderately impaired . . . . Claimant's insight into and description of limitations appears not inconsistent with the objective findings."

- Dr. Pardoll, who conducted a psychological consultation, found that although Woods has "few mental health symptoms that interfere with her social and occupational functioning," it did not "appear that she would be able to tolerate the stressors and pressures associated with a day to day work activity since she is experiencing a lot of pain."

- Dr. Clayton, the state agency's non-treating, non-examining consultant, found Woods's "[a]llegations and statements . . . partially credible," but concluded that the "evidence does not support the level of limitations alleged." He also concluded that Woods could occasionally lift 50 pounds and frequently lift 25 pounds, and could stand or sit for six hours of an eight-hour workday. Thus, he found that Woods could perform medium work.

- Woods wrote in her disability questionnaires that her typical activities varied daily depending on her pain. For example, although she could "prepare simple meals," it was difficult to "cut, chop, or dice." Woods also testified before the ALJ that she could lift approximately three to four pounds, could comfortably sit or stand for 20 minutes, walked with a limp and otherwise had poor balance and stumbled frequently, and had limited grip strength and dropped things "consistently."

5

# B.

After reviewing the evidence, the ALJ found that Woods did not meet the legal definition of "disabled" and denied her claim for Social Security disability insurance benefits. At step one, the ALJ found that Woods was not employed since her onset date. At step two, he concluded that her impairments were "severe." Because her impairments did not meet the requirements of step three, the ALJ proceeded to the residual function capacity assessment.

The ALJ began his assessment of Woods's residual function capacity by summarizing the relevant medical evidence. For example, the ALJ found that certain tests showed only "mild degenerative changes" and that some reports indicated that Woods did not display other typical signs of her alleged impairments, such as swollen joints. The ALJ then concluded that Woods's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistent and limiting effects of these symptoms are not entirely credible." In support of this adverse credibility finding, the ALJ noted that Woods's "daily activities are not those typically associated with an individual alleging the pain, severity, and limitations as posed by the claimant." The ALJ also identified the relative weight he accorded to the various medical experts: great weight to Dr. Clayton, some-to-great weight to Dr. Pardoll, some weight to Dr. Burgess, little weight to Drs. Aasheim and de Wit, and little weight to the NCDHHS decision. Based on this evidence, the ALJ found — consistent with Dr. Clayton's opinion — that Woods had the residual function capacity to perform "medium work" (subject to certain exceptions).

At step four, the ALJ concluded that Woods "is capable of performing past relevant work in production of manufacturing textiles," as that work "does not require the performance of work-related activities precluded by" her residual function capacity. At step five, he found that "other jobs exist[] in the national economy that [Woods] is also able to perform," like janitorial work. The ALJ therefore concluded that Woods did not meet the legal definition of "disabled" and denied her application for benefits.

C.

After exhausting her administrative appeals, Woods filed this action against the Acting Commissioner of Social Security. The parties filed cross-motions for summary judgment, and a magistrate judge recommended granting the Commissioner's motion, denying Wood's motion, and affirming the denial of benefits. The district court adopted this recommendation in full. Woods now appeals.

III.

We review *de novo* a district court's grant of summary judgment. *Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012). "We will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634. (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).

We first address the ALJ's treatment of the prior NCDHHS disability decision.

7

A.

A disability decision by another entity does not bind the SSA. *See* 20 C.F.R § 404.1504. But in considering a claim for Social Security disability insurance benefits, an ALJ must still "evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies." SSR 06-03P, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006). Accordingly, the ALJ "should explain the consideration given to these decisions in the notice of decision for hearing cases." *Id.* at 45,597.[1] Thus, we have previously held that in an SSA disability proceeding, "the [prior] disability determination of a state administrative agency is entitled to consideration." *DeLoatche v. Heckler*, 715 F.2d 148, 150 n.1 (4th Cir. 1983).

This court has not yet addressed the precise weight an ALJ must give to a state agency's disability determination. In a related context, however, we have held that "in making a disability determination, the SSA must give substantial weight to a [Veterans Affairs] disability rating." *Bird*, 699 F.3d at 343. That is so because "the purpose and evaluation methodology of" the SSA and VA disability determinations are "closely related." *Id.* Accordingly, "a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.*

---

[1] This regulation only applies to claims filed before March 27, 2017. *See* 82 Fed. Reg. 5,844, 5,848 (Jan. 18, 2017); 20 C.F.R. § 404.1504. For claims filed on or after March 27, 2017, ALJs must still consider the existence of disability decisions by other governmental or nongovernmental entities, and any evidence underlying those decisions, but are no longer required "to provide written analysis about how they consider the decisions from other governmental agencies." 82 Fed. Reg. at 5,848.

We see no reason why this logic does not also apply to NCDHHS disability decisions. Both NCDHHS and Social Security disability insurance benefits "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* (describing purpose of Social Security disability insurance benefits); *see* NCDHHS, Aged, Blind, and Disabled Medicaid Manual § 200 (2008) (defining "Medicaid" as "A program to assist eligible . . . disabled [individuals] . . . with the cost of medical care"). Moreover, NCDHHS defines "Medicaid to the Disabled" as a "program of medical assistance for individuals under age 65 who meet *Social Security's definition of disability*." *Id.* (emphasis added); *see also id.* § 2525. As a result, a "person who receives Social Security based on disability meets the disability requirement for Medicaid," although he or she must still "apply for Medicaid and must meet all other eligibility requirements." *Id.* § 2525. "Because the purpose and evaluation methodology of both programs are closely related, . . . . in making a disability determination, the SSA must give substantial weight to" an NDCHHS disability decision. *Bird*, 699 F.3d at 343.

Of course, an ALJ may deviate from this default rule and accord an NCDHHS disability decision less than "substantial weight" if "the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.* We have not previously defined what an ALJ must do to satisfy this standard. We now conclude, consistent with our sister circuits, that in order to demonstrate that it is "appropriate" to accord less than "substantial weight" to an NCDHHS disability decision, an ALJ must give "persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (describing standard for VA decisions);

9

*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (explaining that ALJs need not give great weight to VA disability determinations "if they adequately explain the valid reasons for not doing so").

For example, an ALJ could explain which aspects of the prior agency decision he finds not credible and why, describe why he finds other evidence more credible, and discuss the effect of any new evidence made available after NCDHHS issued its decision. This list is not exclusive, but the point of this requirement — and of these examples — is that the ALJ must adequately explain his reasoning; otherwise, we cannot engage in a meaningful review. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (explaining that because we review an ALJ's factual findings for substantial evidence, an ALJ's decision must generally "include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence").

B.

The ALJ in this case concluded that the NCDHHS decision deserved only "little weight." Because this is less than the "substantial weight" such decisions are generally due, we must consider whether the ALJ adequately justified this "deviation."

The entirety of the ALJ's reasoning on this point is as follows:

> The undersigned has considered the State of North Carolina Department of Health and Human Services' ruling finding the claimant met the criteria for Medicaid eligibility (Exhibit 11E). However, Social Security Ruling 06-03p states that:
>
> > "[a] decision by any . . . other governmental agency about whether you are disabled to blind is

10

> based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us."

> As such, the undersigned assigns this ruling little weight, as each program is independent and distinct enough to make it possible that even a disabled Medicaid recipient can be denied SSA benefits. Moreover, the Medicaid determination specifically states that "this decision in no way affects any pending or future claims for Social Security or Supplemental Security Income benefits."

This generic explanation, which could apply to every NCDHHS decision, is neither persuasive nor specific. *See McCartey*, 298 F.3d at 1076. Thus, the ALJ did not adequately justify his decision to accord the NCDHHS decision less than the substantial weight it generally deserves.

The Commissioner raises two arguments for the ALJ's contrary approach. First, the Commissioner suggests that the NCDHHS hearing officer did not actually consider the "same underlying evidence" as the ALJ because the state hearing officer's report did not discuss Dr. Clayton's opinion. *See Bird*, 699 F.3d at 343; Appellee Br. at 15.[2] Of course, where a prior decision does not rely on substantially the same underlying evidence, such as where a state issued its disability decision a number of years before the claimant applied for Social Security disability insurance benefits, the state decision may

---

[2] That the NCDHHS report does not specifically *refer* to Dr. Clayton's opinion does not necessarily mean that the hearing officer did not *consider* it. Nothing in the record indicates that Dr. Clayton's opinion — which the *state agency* ordered and which Dr. Clayton produced five months before NCDHHS issued its disability decision — was not available to the NCDHHS hearing officer.

not be entitled to substantial weight. If that is the case, however, the ALJ must explain these facts. The ALJ's opinion here never mentioned this alleged issue.

Second, the Commissioner argues that because the ALJ's decision as a whole makes clear that he considered the same evidence on which the NCDHHS decision relied, the ALJ did not need to refer expressly to that evidence in discussing the NCDHHS decision. We cannot agree. It may well be that the ALJ considered this evidence in deciding *both* which doctors and evidence to credit *and* whether the NCDHHS decision deserved substantial weight. But meaningful review cannot rest on such guesswork. *See DeLoatche*, 715 F.2d at 150 ("It may be, of course, as the Secretary suggests on appeal, that the ALJ considered all of these factors and proposed to himself cogent reasons for disregarding them. However, on this record we cannot so determine.").

We therefore conclude that the ALJ erred in failing to adequately explain why he accorded the prior NCDHHS disability decision less than substantial weight. For this reason, we must vacate the decision and remand the case to the ALJ.


IV.

Woods raises several other challenges to the ALJ's decision. Because these issues may recur on remand, we address them now. *See Bird*, 699 F.3d at 342–43.

A.

First, Woods contends that the ALJ did not adequately perform the residual function capacity assessment. In performing this assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing

12

specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio*, 780 F.3d at 636 (quoting SSR 96-8p, 61 Fed. Reg. at 34,478) (internal quotation marks omitted). In other words, the ALJ must *both* identify evidence that supports his conclusion *and* "build an accurate and logical bridge from [that] evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)) (internal quotation marks omitted).

We agree with Woods that the ALJ did not do so here. The ALJ concluded that Woods could perform "medium work" and summarized evidence that he found credible, useful, and consistent. But the ALJ never explained how he concluded — *based on this evidence* — that Woods could actually perform the tasks required by "medium work," such as lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). The ALJ therefore failed to build an "accurate and logical bridge" from the evidence he recounted to his conclusion about Woods's residual function capacity. On remand, the ALJ should remedy this error.

B.

Woods also contends that the ALJ erred in finding Woods not credible because her "daily activities are not those typically associated with an individual alleging the pain, severity, and limitations as posed by the claimant."

An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them. *See Brown v. Commissioner*,

13

873 F.3d 251, 263 (4th Cir. 2017).  The ALJ here did just that.  For example, the ALJ noted that Woods can "maintain her personal hygiene, cook, perform light household chores," "shop," "socialize with family members, and attend church services on a regular basis."  But the ALJ did not consider Woods's statements that she cannot button her clothes, has trouble drying herself after bathing, and sometimes needs help holding a hairdryer; that she can prepare simple meals but has trouble cutting, chopping, dicing, and holding silverware or cups; it takes her all day to do laundry; she shops only for necessities, and that process takes longer than normal; when she reads to her grandchildren, they have to turn the pages because of severe pain in her hands; and that some days, she spends the entire day on the couch.

On remand, the ALJ should consider not just the *type* of Woods's daily activities, but also the *extent* to which she can perform them in assessing her credibility.

C.

Finally, we note two additional problems with the ALJ's analysis as it pertains to his weighting of the various medical opinions.

An ALJ must include "a narrative discussion describing how the evidence supports" his "explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations."  *Monroe*, 826 F.3d at 190 (internal quotation marks and citation omitted).  In this case, the ALJ's discussion of certain expert opinions was at times conclusory or sparse.  For example, the ALJ gave Dr. Burgess's opinion "some weight" because "it is rather vague and general in nature," but did not discuss what aspects of that opinion he found overly vague.  *Cf. id.* at 191

14

(finding insufficient the explanation that the "consultative examiner opinion is consistent with the objective evidence and other opinions of record" even though the ALJ had recounted various medical evidence earlier in his opinion). On remand, we caution the ALJ to provide better explanations in support of these types of determinations.

We are also skeptical about the ALJ's rationale for according great weight to the opinion of Dr. Clayton — who did not personally examine or treat Woods — while at the same time discounting the opinions of the doctors who did examine and treat her. In general, an ALJ should accord "more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2); *id.* § 404.1527(c)(1) (stating the same presumption for examining sources). An ALJ may, however, credit the opinion of a non-treating, non-examining source where that opinion has sufficient indicia of "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion." *Brown*, 873 F.3d at 268*; see* 20 C.F.R. § 404.1527(c).

It is not clear to us that Dr. Clayton's opinion satisfies this standard. For example, Dr. Clayton concluded that Woods could lift up to 50 pounds (something none of her treating physicians believed she was capable of), but failed to explain *how* he arrived at that specific number. The same is true of his conclusion that Woods can sit or stand for six hours in an eight-hour workday. As the ALJ himself acknowledged, these

15

conclusions conflict with the opinions of Drs. Burgess, de Wit, Aasheim, and with Woods's own testimony. Nor is there any evidence in the record that Dr. Clayton is a specialist and therefore due additional deference. The ALJ should consider these potential shortcomings on remand in deciding what weight to accord the opinion of Dr. Clayton, and any other non-treating, non-examining physicians.

V.

For the foregoing reasons, we vacate the judgment of the district court and remand the case with instructions to vacate the denial of benefits and remand for further administrative proceedings consistent with this opinion.

*VACATED AND REMANDED WITH INSTRUCTIONS*