**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1076**

WILLIAM PERRY,

       Plaintiff - Appellant,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

       Defendant - Appellee,

    and

CAROLYN COLVIN, Commissioner of the Social Security Administration,

       Defendant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:17-cv-00132-CMH-IDD)

Argued: December 12, 2018                Decided: March 8, 2019

Before AGEE, DIAZ, and HARRIS, Circuit Judges.

Vacated and remanded by unpublished opinion. Judge Harris wrote the opinion, in which Judge Agee and Judge Diaz joined.

**ARGUED:** Christine P. Benagh, COLLIER~BENAGH LAW, P.L.L.C., Washington, D.C., for Appellant. Kimere Jane Kimball, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Douglas K.W. Landau, ABRAMS & LANDAU LTD., Herndon, Virginia, for Appellant. G. Zachary

Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia; Nora Koch, Regional Chief Counsel, Victor Pane, Supervisory Attorney, Maija DiDomenico, Assistant Regional Counsel, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

William Tyrone Perry appeals the denial of his applications for disability insurance benefits and supplemental security income under the Social Security Act. An Administrative Law Judge denied Perry's applications in part because she determined that Perry could perform work in a "non-production oriented work setting." But that phrase has no established regulatory definition, and the judge did not explain it. As a result, we cannot assess whether a limitation to "non-production oriented work setting[s]" properly accounts for Perry's impairments, and we therefore vacate and remand for further administrative proceedings.

## I.

In 2012, William Tyrone Perry suffered a stroke, leaving him with speech, memory, and concentration problems; seizures and hand tremors; vision impairment; and elevated blood pressure. Based on those impairments, Perry applied to the Social Security Administration for disability insurance benefits and supplemental security income.

An Administrative Law Judge ("ALJ") denied Perry's applications because she found that Perry was not "disabled" within the meaning of the Social Security Act. An individual is "disabled" under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (defining

3

disability for purposes of disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (adopting same definition for purposes of supplemental security income).

To determine whether an individual qualifies as "disabled" under this definition, ALJs use the "five-step sequential evaluation process" outlined in the Social Security Administration's regulations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first three steps ask "(1) whether the claimant is working; (2) if not, whether she has a severe impairment; and (3) if she does, whether the impairment meets or equals a listed impairment," so that it may be treated as categorically disabling. *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (internal quotation marks omitted). If the claimant satisfies all three of these steps, then he qualifies as "disabled." *Id.*

But if – as here – the claimant satisfies steps one and two, but not step three, then the ALJ continues the analysis, and assesses the claimant's residual functional capacity – that is, "the most [the] claimant can still do despite all of [his] medically determinable impairments." *Woods v. Berryhill*, 888 F.3d 686, 689 (4th Cir. 2018) (internal quotation marks omitted). The ALJ then proceeds to step four to consider whether, in light of that residual functional capacity, the claimant can perform his past relevant work. *See id.* If the claimant cannot, then the ALJ moves to the fifth and final step, and determines whether the claimant's residual functional capacity allows him to "perform[] other work . . . that exists in significant numbers in the national economy." *Id.* (internal quotation marks omitted). Only if the answer to this question also is "no" will the claimant qualify as "disabled" under step five. *See id.*

4

Here, at steps one and two, the ALJ determined that Perry was not employed and that he suffered from severe physical and mental impairments. But because those impairments did not match the impairments listed in the regulations, the ALJ could not find conclusively that Perry was disabled after step three. At that point, the ALJ properly moved on to assess Perry's residual functional capacity.

Through that assessment, the ALJ determined that Perry's physical and mental capacity both were limited as a result of his stroke. Of particular relevance here are Perry's mental limitations: Perry, the ALJ concluded, had the mental capacity to perform only "unskilled work" in a "non-production oriented work setting." A.R. 36. The ALJ did not explain what she meant by "non-production oriented work setting," nor how that limitation addressed Perry's mental impairments.

Based on this residual functional capacity assessment, the ALJ concluded under step four that Perry was unable to perform his prior work as a plumber, and so moved to the fifth and final step of the process. To inform her analysis under step five, the ALJ asked a vocational expert whether there were jobs in the national economy that an individual could perform if that individual were capable of unskilled work in a non-production oriented work setting. The vocational expert testified that there were three such jobs: mail clerk, garment sorter, and price marker. Based on that testimony, the ALJ determined that Perry could perform other work that existed in the national economy, and so concluded that he was not disabled within the meaning of the Social Security Act. Accordingly, the ALJ denied Perry's applications for benefits.

5

Perry sought review in the district court, alleging numerous errors in the ALJ's analysis. The Social Security Commissioner defended the ALJ's decision, and both parties moved for summary judgment based on the administrative record. The magistrate judge agreed with the Social Security Commissioner, and recommended that the district court grant the Commissioner's summary judgment motion. The district court adopted that recommendation, and entered judgment on behalf of the Commissioner. This timely appeal followed.

## II.

We review de novo a district court's decision on a motion for summary judgment. *Woods*, 888 F.3d at 691. "We will affirm the Social Security Administration's disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Id.* (internal quotation marks omitted).

## A.

We begin with Perry's challenge to the ALJ's residual functional capacity assessment. According to Perry, the ALJ erred in conducting that assessment, in part because she failed to adequately explain how she arrived at her conclusions. Because we agree with Perry that the ALJ's residual functional capacity assessment is "lacking in the analysis needed for us to review meaningfully [her] conclusions," *Mascio v. Colvin*, 780 F.3d 632, 636–37 (4th Cir. 2015), we vacate and remand for further proceedings.

For this court to meaningfully review an ALJ's residual functional capacity assessment, the ALJ "must include a narrative discussion describing how the evidence

6

supports each conclusion." *Id.* at 636 (quoting Social Security Ruling 96-8p, 61 Fed. Reg. 34,474, 34,478 (July 2, 1996)). The ALJ, in other words, "must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." *Woods*, 888 F.3d at 694 (emphases and alteration in original) (internal quotation marks omitted). Otherwise, "we are left to guess about how the ALJ arrived at his conclusions" and, as a result, cannot meaningfully review them. *Mascio*, 780 F.3d at 637.

Here, the ALJ found that Perry's ongoing mental impairments limited his residual functional capacity in two ways: Perry could perform only "unskilled work," and that work could occur only in a "non-production oriented work setting." A.R. 36. "Unskilled work" is a term of art that is defined in the regulations. *See* 20 C.F.R. §§ 404.1568(a), 416.968(a). But no analogous regulatory definition exists for the "non-production oriented work setting" specified by the ALJ, or for any other similar term. Nor, as we recently recognized, are such descriptions commonly used in our case law or otherwise self-explanatory. *Thomas v. Berryhill*, __ F.3d __, 2019 WL 193948, at *3 (4th Cir. 2019) (ALJ erred by failing to explain meaning of restriction to jobs that do not require "a production rate or demand schedule"). And finally, the ALJ offered no explanation of her own for what she meant when she used the phrase "non-production oriented work setting" in assessing Perry's residual functional capacity. As a result, we "remain uncertain as to what the ALJ intended," *Mascio*, 780 F.3d at 637, and cannot meaningfully assess whether there is a "logical bridge" between the evidence in the record and the ALJ's conclusion, *Woods*, 888 F.3d at 694.

7

The missing explanation in this case is particularly important because it is undisputed that Perry's stroke left him with limitations in concentration, persistence, and pace. And those limitations, as we have held, are not accounted for adequately by the portion of the ALJ's assessment that restricts Perry to "unskilled work." *See Mascio*, 780 F.3d at 638 ("[A]n ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting [the claimant] to simple, routine tasks or unskilled work." (internal quotation marks omitted)). If those limitations are addressed at all, that is, then it must be through the ALJ's reference to a "non-production oriented work setting." But, again, we do not know what the ALJ intended when she used that phrase. As a result, it is difficult, if not impossible, to evaluate whether restricting Perry to a "non-production oriented work setting" properly accounted for Perry's well-documented limitations in concentration, persistence, and pace. *See Thomas*, 2019 WL 193948, at *3 (ALJ's failure to explain meaning of restriction to jobs not requiring "a production rate or demand schedule" made it "difficult, if not impossible," to determine whether that restriction was supported by substantial evidence); *see also Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) (ALJ's failure to define "fast paced production" made it impossible to "assess whether a person with [the claimant's] limitations could maintain the pace proposed").[1]

---

[1] We note that in *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017), we found that an ALJ had adequately explained a residual functional capacity assessment that restricted the claimant, in part, to "non-production jobs." But in contrast to this case and to *Thomas*, the ALJ in *Sizemore* provided additional context, explaining that the claimant could perform work only in a "low stress" setting, without any "fast-paced
(Continued)

Because the ALJ's failure to explain the meaning of "non-production oriented work setting" requires us "to guess about how [she] arrived at [her] conclusions" and leaves us "uncertain as to what [she] intended," we conclude that her assessment is "lacking in the analysis needed for us to review meaningfully [her] conclusions," *Mascio*, 780 F.3d at 636–37. Accordingly, we vacate and remand. In so doing, we express no opinion as to whether the ALJ's residual functional capacity assessment was correct; we ask simply that the ALJ give us a "clearer window into her reasoning," *Thomas*, 2019 WL 193948, at *4.[2]

**B.**

Perry raises several other challenges to the ALJ's decision. Having carefully considered the record provided on appeal and the arguments of the parties, we reject Perry's remaining challenges for the reasons stated by the magistrate judge and the district court. *See Perry v. Berryhill*, No. 1:17-cv-00132 (E.D. Va. Dec. 14, 2017); *Perry v. Berryhill*, No. 1:17-cv-00132 (E.D. Va. Sept. 27, 2017). In short, we agree that the

---

work" or "public contact," to account for moderate limitations in concentration, persistence and pace. *Id.* at 79 (internal quotations omitted). Those descriptors helped to explain the restriction intended by the ALJ, and allowed us to evaluate whether that restriction adequately accounted for the claimant's limitations. *Id.* at 81.

[2] Perry urges us to hold that the ALJ in fact did not properly account for his limitations in concentration, persistence, and pace, either in her residual functional capacity assessment or in the hypotheticals posed to the vocational expert on the basis of that assessment. We will not attempt to resolve that issue here. As discussed above, the ALJ's failure to provide an adequate explanation of her residual functional capacity assessment makes it impossible for us to determine whether that assessment – and particularly the portion restricting Perry to jobs in a "non-production oriented work setting" – properly accounts for Perry's limitations.

ALJ's step three determination is supported by substantial evidence, that the ALJ did not err in failing to order additional cognitive testing, that the ALJ adequately considered the conflicting evidence in the record, and that the ALJ assigned appropriate weight to the opinions of the state agency physicians and psychologists who reviewed the medical and nonmedical evidence in the record.

## III.

For the foregoing reasons, we vacate the district court's order granting summary judgment to the Commissioner, and remand to the district court with instructions to vacate the denial of benefits and remand for further administrative proceedings consistent with this opinion.

*VACATED AND REMANDED*