**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2239**

EDWARD L. BENFIELD,

                Plaintiff - Appellant,

     v.

ANDREW SAUL, Commissioner, Social Security Administration,

                Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Graham C. Mullen, Senior District Judge. (1:18-cv-00206-GCM)

Submitted: August 31, 2020                Decided: September 24, 2020

Before GREGORY, Chief Judge, and WYNN and RICHARDSON, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

Samuel F. Furgiuele, Jr., Boone, North Carolina, for Appellant. R. Andrew Murray, United States Attorney, Charlotte, North Carolina, Gill P. Beck, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina; Leah F. Golshani, Special Assistant United States Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Edward L. Benfield appeals the district court's order granting the Commissioner's motion for summary judgment, denying Benfield's motion for summary judgment, and upholding the Administrative Law Judge's (ALJ) denial of Benfield's application for a period of disability, disability insurance benefits, and supplemental security income. On appeal, Benfield argues that the ALJ (1) did not base his residual functional capacity (RFC) on a proper function-by-function analysis or support it with substantial evidence; (2) improperly relied on the vocational expert's testimony; and (3) failed to properly weigh the medical opinions. Although most of Benfield's arguments are without merit, we agree that there are gaps in the ALJ's RFC analysis and that an apparent conflict exists between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT). Accordingly, we vacate the district court's judgment and direct the court to remand the case to the agency for further proceedings consistent with this opinion.

We review de novo a district court's decision to grant summary judgment. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). "A district court will affirm the [Social Security Administration's] disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Monroe v. Colvin*, 826 F.3d 176, 186 (4th Cir. 2016) (internal quotation marks omitted). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citation and internal quotation marks omitted).

2

"In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (brackets, citation, and internal quotation marks omitted). However, "we do not reflexively rubber-stamp an ALJ's findings," *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017), and, to enable meaningful judicial review, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence," *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

The ALJ employs a five-step sequential process to evaluate a disability claim.[1] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2020). At step three of the process, the ALJ must decide whether a claimant's impairment or combination of impairments meets or equals one of the listings at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2020). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant fails at step three, the ALJ must

---

[1] We have previously described the sequential process:

[The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

*Radford*, 734 F.3d at 290-91 (internal quotation marks omitted).

3

then determine the claimant's [RFC], which has been defined as the most you can still do despite your physical and mental limitations." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017) (brackets and internal quotation marks omitted).

In assessing the claimant's RFC, "the ALJ must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Monroe*, 826 F.3d at 179 (internal quotation marks omitted). Further, the ALJ's "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (internal quotation marks omitted). "[T]he ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from that evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (brackets and internal quotation marks omitted).

On appeal, Benfield first argues that: (1) the RFC does not account for his limited cognitive abilities; (2) the RFC does not adequately account for his obesity, shortness of breath, and fatigue; (3) the ALJ did not explain her rejection of his contentions regarding the effects of his medication; (4) the RFC ignored his issues with frequent urination; and (5) the RFC ignored his issues with twisting and bending. On the first, second, and fifth issues, we conclude that the ALJ did not err. On the contrary, the ALJ identified substantial evidence to support her conclusions and built an accurate and logical bridge from that evidence to her conclusions. *See id.*

We conclude, however, that the ALJ provided an insufficient narrative discussion of the third and fourth issues to enable meaningful judicial review. *See Radford*, 734 F.3d at 295. On the third issue, Benfield testified that his oxycodone prescription, which he takes three times each day, makes him so drowsy that he has to lie down for 20 to 30 minutes each time he takes it. In response, the ALJ stated only that this claim was inconsistent with the record and that, even if it were consistent, the RFC accounts for it by precluding jobs that require exposure to unprotected heights. The ALJ did not explain why the claim is inconsistent with the record or how a prohibition against unprotected heights accounts for Benfield's alleged need to lie down multiple times a day. Thus, because the ALJ's assessment does not include a narrative discussion of how the evidence supports her conclusions, we are unable to meaningfully review this issue.

On the fourth issue, Benfield testified that he urinates 20 to 30 times each day. The vocational expert then testified that all work would be precluded if an individual needed to go to the bathroom, outside of scheduled breaks, an average of 10 times per workday. Despite this testimony, the ALJ did not address the issue of frequent urination in the RFC or elsewhere in her opinion. The district court attempted to explain that, considering nonwork hours and scheduled breaks, the ALJ could reasonably have concluded that Benfield would have needed fewer than 10 unscheduled bathroom breaks in a workday. This may be true, but it is not the court's responsibility to guess at the ALJ's reasoning. Again, without an explanation from the ALJ, we cannot perform a meaningful review.

Benfield next argues that the ALJ improperly relied on the vocational expert's testimony. "In order for a vocational expert's opinion to be relevant or helpful, it must be

5

based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (brackets and internal quotation marks omitted). The ALJ also "has an affirmative responsibility" to ask the vocational expert "if the evidence he or she has provided conflicts with information provided in the DOT," and, if the evidence appears to conflict, "obtain a reasonable explanation for the apparent conflict." Social Security Ruling 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Moreover, the ALJ must independently identify any apparent conflicts and obtain a reasonable explanation for them. *Pearson*, 810 F.3d at 208-09.

Benfield contends that the ALJ improperly relied on the vocational expert's testimony because (1) the ALJ's hypothetical overstated Benfield's language ability; (2) the ALJ failed to properly ask the vocational expert whether her testimony conflicted with the DOT; and (3) the ALJ failed to independently identify and obtain explanations for two apparent conflicts between the vocational expert's testimony and the DOT. On the first two issues, we conclude that Benfield's claims are without merit. There was substantial evidence to support the ALJ's conclusion regarding Benfield's language ability, and the ALJ properly explained her reasoning. The ALJ also sufficiently inquired about conflicts with the DOT at the beginning and end of the vocational expert's testimony.

On the third issue, Benfield alleges two apparent conflicts. First, Benfield argues that, despite her testimony to the contrary, the vocational expert's statements about excessive absences and time off task is not covered by the DOT. Even if this is correct, it is irrelevant to this appeal. Benfield's RFC does not require a job that allows for extra

6

absences or time off task. Accordingly, the vocational expert's testimony on those issues did not impact the ALJ's finding of nondisability. *See Pearson*, 810 F.3d at 209-10.

The second apparent conflict is more concerning. Benfield's RFC precludes jobs that would require him to read written instructions. On appeal, Benfield correctly notes that the DOT description of a plastic hospital products assembler—one of the three jobs provided by the vocational expert—states that the employee is required to review work orders. DOT 712.687-010, 1991 WL 679245 (Jan. 1, 2016). We agree that reviewing work orders is close enough to reading written instructions that the ALJ should have sought an additional explanation from the vocational expert.[2] The district court correctly notes that this error, on its own, would not necessarily require reversal in light of the remaining available positions from the other two jobs the vocational expert listed. However, considering that the errors with the RFC already necessitate remand, this conflict should also be reexamined by the ALJ.

Finally, Benfield claims that the ALJ did not properly weigh the opinions of two of his examining physicians. We disagree. To determine the weight to be given to any medical opinion, the ALJ should consider several factors, including the extent to which the opinion is supported by the evidence, the consistency of the opinion with the record as a whole, and whether the medical issues are related to the practitioner's area of specialty.

---

[2] We disagree with Benfield, however, that the requirement that a plastic hospital products assembler "label[] cartons with identifying information," DOT 712.687-010, 1991 WL 679245, creates an apparent conflict with the RFC's prohibition against preparing reports.

7

*Brown*, 873 F.3d at 256. The ALJ should generally accord more weight to medical opinions from an examining source than a nonexamining source and more weight to medical opinions from a treating source than a nontreating source. *See id.* at 268; *Woods*, 888 F.3d at 695. We hold that the ALJ relied on the proper factors in determining how much weight to assign to each medical opinion, that she properly explained her conclusions, and that her conclusions were supported by substantial evidence.

We vacate the district court's judgment and remand with instructions to remand the case to the agency for further proceedings consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*VACATED AND REMANDED*