**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-1531**

REBECCA J.,

    Plaintiff - Appellant,

  v.

KILOLO KIJAKAZI,

    Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. David J. Novak, District Judge. (3:20-cv-00795-DJN)

Submitted: January 18, 2023        Decided: June 13, 2023

Before NIEMEYER and WYNN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Bruce K. Billman, Fredericksburg, Virginia, for Appellant. Jessica D. Aber, United States Attorney, Elizabeth C. Wu, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The plaintiff in this case applied for social security disability and insurance benefits, claiming that she has been unable to work since January 6, 2016.  The Social Security Administration denied her claim initially and upon reconsideration.  At plaintiff's request, a hearing was held before an administrative law judge (ALJ).  The ALJ denied benefits and the district court upheld the decision.  We affirm.

I.

The Social Security Administration uses a five-step sequential process to evaluate disability claims.  Steps one through three ask: (1) "whether the claimant has been working"; (2) if not, "whether the claimant's medical impairments meet the regulations' severity and duration requirements"; and (3) if so, "whether the medical impairments meet or equal an impairment listed in the regulations." *Shinaberry v. Saul*, 952 F.3d 113, 118-19 (4th Cir. 2020) (cleaned up).  "If the claimant prevails at steps one through three, she is disabled." *Id.* at 119.  "But if the claimant fails at step three, the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can still do despite physical and mental limitations that affect her ability to work." *Id.* (cleaned up).  After determining the RFC, "the ALJ proceeds to step four and determines whether the claimant has proven that she is unable to perform past work." *Id.*  If she prevails on this question, "the ALJ proceeds to step five, where the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience." *Id.* (cleaned up).

2

Plaintiff claims that she is disabled due to a perforated septum in her nasal cavity. Plaintiff testified that her sinuses constantly drain fluid into pockets in the perforated area and dry. To loosen the secretions, plaintiff testified that she must perform a nasal irrigation using a solution of baby shampoo and saline and "steam" at least three times a day for up to two hours at a time. This "steaming" consists of breathing in steam from hot water to loosen the dried secretions. She claims that the frequency and duration of the steaming regimen renders it impossible for her to work. No physician has prescribed this specific form of treatment and there is some evidence that plaintiff has eschewed other prescribed treatments in favor of her preferred irrigation and steaming regimen. There is also no medical evidence to support her testimony that she must irrigate and steam with the frequency that she claims. There are varied medical opinions as to whether her perforated septum can or should be surgically repaired. Plaintiff sought an opinion from a physician in California to surgically repair her perforated septum and obtained an estimate of $20,000 to undergo the surgery, but she has not followed up due to the cost. Plaintiff testified that she wants to have the surgery so she "can get back to work." J.A. 118. Her attorney has also represented that the surgery is an available option and that plaintiff is "not here for the disability benefits," but rather "for the Medicare." J.A. 112.

State agency experts reviewed plaintiff's medical records. At the initial level of administrative review in April 2018, James Darden, M.D., found no severe impairments that significantly limited plaintiff's ability to work, and the agency denied her claim. At the reconsideration level in July 2018, Robert McGuffin, M.D., concurred in Dr. Darden's assessment, and her claim was again denied. Plaintiff requested a hearing before an ALJ.

3

The ALJ found that plaintiff was not working and, contrary to the state agency consultants' opinions, found that she has the following severe impairments: obesity, Graves' disease, asthma, and a perforated septum. Because plaintiff did not have an impairment or combination of impairments that would qualify her for benefits at step three, the ALJ proceeded to the RFC analysis and found as follows:

> [C]laimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can sit, stand and walk six hours each in an eight-hour workday, occasional exposure to the weather, occasional exposure to dust, fumes, odors and pulmonary irritants, and would be off task seven percent of the workday.

J.A. 11.

In formulating the RFC, the ALJ explained that plaintiff's "impairments could reasonably be expected to cause [her] alleged symptoms," but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." J.A. 12. In support, the ALJ discussed the objective medical evidence, including the opinions of the state agency physicians, and the testimony of the plaintiff in detail. The ALJ found that the objective evidence did not support plaintiff's claim "that her impairments prevent her from working because she has fatigue and needs to frequently steam her throat due to excess mucous," or her claim that "[s]he struggles to complete even routine daily tasks." J.A. 12. In sum, the ALJ found that "[a]lthough the claimant does experience some symptoms because of her physical impairments, the objective findings contained in the record, the conservative care the claimant received, and her admitted ability to perform a

4

variety of daily tasks all suggest that these symptoms are not as limiting as she claims." J.A. 12-13.

At steps four and five, the ALJ noted that plaintiff was 48 years old at the time of the hearing, which is considered a "younger person" on the date last insured. 20 C.F.R § 404.1563(c). She has at least a high school education and previously worked as a licensed practical nurse. At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a nurse, shifting the burden to the Commissioner to prove that plaintiff could "perform other work that exists in significant numbers in the national economy, considering [her] RFC, age, education, and work experience." *Shinaberry*, 952 F.3d at 119 (cleaned up). At step five, the ALJ found, consistent with the opinion of the vocational expert who testified at the hearing, that, considering plaintiff's age, education, work experience, and residual functional capacity, plaintiff was capable of making a successful transition to other jobs that exist in significant numbers in the national economy and that she can perform. Consequently, the ALJ determined that plaintiff does not have a qualifying disability under the Social Security Act. The Appeals Council denied plaintiff's petition for review.

Plaintiff then filed this action in district court, arguing that the ALJ's decision was not supported by substantial evidence. Specifically, plaintiff alleged that the ALJ improperly discounted her subjective complaints and insufficiently accounted for the requisite frequency and duration of the nasal irrigation and steaming she must perform to alleviate her symptoms. Contrary to the ALJ's finding that the evidence only supported a finding that plaintiff would be off task no more than 7% of the workday, plaintiff claims

5

that her treatments would result in a loss of more than 15% productivity in any given day, plus her absence from work for more than one day per month. Plaintiff also argued that the ALJ erred in considering her ability to perform activities of daily living and her failure to pursue surgery when determining the extent and severity of her impairments. The magistrate judge found that the decision of the ALJ was supported by substantial evidence and recommended that plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted. Over plaintiff's written objections, the district court agreed. This appeal followed.

## II.

"[W]e will not disturb an ALJ's decision on an application for [disability benefits] when the ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (cleaned up). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (cleaned up). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (cleaned up).

On appeal, plaintiff argues that the ALJ failed to build a logical bridge from the objective evidence to his finding that plaintiff does not need to undertake treatments as

6

frequently or for the duration that she claims and, consequently, erred in finding that her impairments would only result in her being off task for up to 7% of the workday. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (in assessing a claimant's RFC, "the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from that evidence to his conclusion.") (cleaned up).   Although plaintiff acknowledges that a perforated septum is "*generally* a very minor medical problem," Br. of Appellant at 3, she presses her claim that she is unable to work due to the frequency and duration of the "steaming" treatments she must perform each day to treat her specific condition.  Plaintiff argues that the ALJ erred in relying upon her ability to perform her activities of daily living because he did not account for her claim that this ability is intermittent and sporadic—also because of her "steaming" regimen and its limitations— and erred in relying upon the evidence that she has received conservative care to treat her symptoms and has declined surgery.  We are unpersuaded.

As the district court correctly observed, the record in this case is "devoid of sufficient evidence, including opinions and treatment notes, demonstrating that Plaintiff would be off task more than seven percent of the day to account for her nasal treatment." J.A. 45.   No physician has prescribed this particular form of treatment, much less made any recommendation as to frequency or duration.  And plaintiff has produced no expert opinion suggesting that she has limitations greater than those accounted for in the RFC found by the ALJ.  The ALJ exhaustively considered the objective medical evidence and plaintiff's subjective description of her symptoms and found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not

entirely consistent with the medical evidence and other evidence in the record." J.A. 12. Specifically, the ALJ considered and explained that the objective evidence did not support plaintiff's claim "that her impairments prevent her from working because she has fatigue and needs to frequently steam her throat due to excess mucous," or her claim that "[s]he struggles to complete even routine daily tasks." J.A. 12.

As noted above, we do not "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (cleaned up). When faced with conflicting evidence in the record, the responsibility to decide which evidence to credit lies with the ALJ. *See id.* Having reviewed the entirety of the evidence presented to the ALJ, we find no error in the ALJ's assessment of the medical evidence or his assessment of plaintiff's credibility. The ALJ properly considered plaintiff's ability to care for her personal needs and perform activities of daily living in evaluating the credibility of her subjective symptoms, properly documented the evidence and the analysis he relied upon in determining plaintiff's RFC, and built "an accurate and logical bridge" from the evidence he recounted to his conclusion. *Woods*, 888 F.3d at 694. We also reject plaintiff's assertion that the ALJ erred in considering the availability of surgery to correct her perforated septum in determining her disability. The ALJ correctly observed that plaintiff had consulted with a surgeon but had thus far declined to follow through—a fact that is not in dispute given plaintiff's testimony and the representations of her attorney regarding the reason she has filed a claim. And, in any event, the ALJ did not rely upon the availability of a possible corrective surgery as the basis for denying plaintiff's disability claim or for finding her to

be only partially credible. The ALJ did not credit plaintiff's testimony regarding the limiting effects of her chosen treatment after observing her testimony and in light of all the objective evidence and reached the reasonable conclusion that she was not disabled.

III.

For the foregoing reasons, we find that substantial evidence supports the agency's decision and affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*