**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2383**

LAURA SUE HALPERIN,

       Plaintiff - Appellant,

   v.

ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

       Defendant - Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Loretta C. Biggs, District Judge.  (1:18-cv-00396-LCB-JEP)

Argued:  January 28, 2021                     Decided:  April 6, 2021

Before KING, HARRIS, and RUSHING, Circuit Judges.

Affirmed by unpublished opinion.  Judge Rushing wrote the opinion, in which Judge King and Judge Harris joined.

**ARGUED:**  Evan Matthew Metaxatos, SASSER LAW FIRM, PA, Charlotte, North Carolina, for Appellant.  Robert Drum, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:**  Brian O'Donnell, Acting Regional Chief Counsel, Victor Pane, Supervisory Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania; Matthew G.T. Martin, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,

Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

Laura Sue Halperin appeals the district court's decision upholding the Social Security Administration's denial of her application for disability insurance benefits. Halperin argues that the administrative law judge (ALJ) applied the wrong legal standards in determining that her scoliosis does not medically equal a condition listed in the relevant regulations. After careful consideration, we affirm.

I.

On June 7, 2013, Halperin applied for disability insurance benefits, alleging, as relevant here, a disability due to scoliosis. Her claim was denied, appealed, and remanded before the ALJ rendered the decision underlying this appeal on November 21, 2017. The Appeals Council subsequently denied review, at which point the ALJ's decision became final.

Regulations promulgated by the Social Security Administration establish a "five-step sequential evaluation process" that ALJs must follow when determining whether a claimant is disabled within the meaning of the Social Security Act and its regulations. 20 C.F.R. § 404.1520(a); *see also* 42 U.S.C. § 423(d); 20 C.F.R. Ch. III, Pt. 404. Pursuant to that process:

> [T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

3

*Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017) (alteration in original) (quoting *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)); *see also* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden to make the necessary showing at steps one through four; the burden then shifts to the Commissioner of Social Security at step five. *Lewis*, 858 F.3d at 861; *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

The ALJ here determined that Halperin carried her burden at steps one and two of the evaluation process but did not prove disability at step three by showing that her scoliosis (or other impairments not appealed) either meets or equals an impairment listed in Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Appendix 1 lists impairments the Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id.* § 404.1525(a); *see also id.* § 404.1525(c)(4) ("Most of the listed impairments are permanent or expected to result in death."). Therefore, if a claimant prevails at step three, the ALJ must find her disabled without continuing to the other steps of the analysis. *Id.* § 404.1520(d); *cf. Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) ("[T]he medical criteria defining the listing impairments [are set] at a higher level of severity than the statutory standard" because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.").

As the disjunctive phrasing indicates, a claimant prevails at step three by showing that her impairment either "meets" or "equals" a listing in Appendix 1. *See* 20 C.F.R. § 404.1525(c)(5) ("If your impairment(s) does not meet the criteria of a listing, it can medically equal the criteria of a listing."). Appendix 1 comprises physical and mental

4

disorders categorized by the body system they affect. *See generally* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Most body-system sections include an introduction followed by subsections describing particular impairments. 20 C.F.R. § 404.1525(c)(1). The introduction may "include specific criteria for establishing a diagnosis, confirming the existence of an impairment, or establishing that [an] impairment[] satisfies the criteria of a particular listing in the body system." *Id.* § 404.1525(c)(2). A claimant's impairment "meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." *Id.* § 404.1525(c)(3). A claimant's condition equals a listed impairment if it "is medically equivalent to a listed impairment." *Id.* § 404.1529(d)(3). An unlisted impairment "is medically equivalent to a listed impairment in [A]ppendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). Put more granularly, medical equivalence requires that a claimant's "symptoms, signs, and laboratory findings are at least equal in severity" to those of a listed impairment. *Id.* § 404.1529(d)(3); *see also id.* § 404.1526(b)(2) (requiring that the findings related to a claimant's impairment must be "at least of equal medical significance to those of a listed impairment").

Appendix 1 does not list scoliosis, Halperin's relevant impairment. Rather, it provides that where "[a]bnormal curvature of the spine (specifically, scoliosis, kyphosis, and kyphoscoliosis) . . . results in symptoms related to fixation of the dorsolumbar or cervical spine, evaluation of equivalence may be made by reference to 14.09C." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00L. Halperin contends that her scoliosis medically equals

5

Listing 14.09C1, which applies to "[a]nkylosing spondylitis or other spondyloarthropathies" and in pertinent part requires:

> Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees)[.]

*Id.* § 14.09C1. The introduction for Section 14.00 elaborates on the required severity for this listing, stating:

> Listing-level severity in 14.09A and 14.09C1 is shown by an impairment that results in an "extreme" (very serious) limitation. . . . In 14.09C1, if you have the required ankylosis (fixation) of your cervical or dorsolumbar spine, we will find that you have an extreme limitation in your ability to see in front of you, above you, and to the side. Therefore, inability to ambulate effectively is implicit in 14.09C1, even though you might not require bilateral upper limb assistance.

*Id.* § 14.00D6(e)(i).[1]

Applying these principles in Halperin's case, at step three the ALJ determined that Halperin's medical evidence showed a curvature of greater than 45° from the vertical position. But the ALJ reasoned that

> [L]isting 14.09 requires more than just curve measurements. Listing 14.09 focuses on fixation (kyphosis) and the claimant's medical records do not address this in enough detail for a medical equivalence finding. For example,

---

[1] The regulations define "inability to ambulate effectively" as

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2(b)(1).

6

the undersigned notes that the imaging in April 2014 indicates that her primary curve measured 58° but the report says "there was *some* upper lumbar kyphosis in the curvature." This suggests that there was not fixation throughout the curve.

Further, the introductory comments to 14.00 indicate that consideration goes beyond the curvature measurements. Section 14.00D6(e)(i) indicates that listing-level severity in 14.09Cl is shown by an impairment that results in an "extreme" (very serious) limitation. For example, such an individual would show extreme limitation in their ability to see in front of themselves, above themselves, and to the side. Inability to ambulate effectively is implicit in 14.09Cl. The claimant did not have range of motion limitations to that extreme prior to surgery. The claimant did not demonstrate any gait disturbance until just before the surgery. Even then, she remained able to ambulate effectively.

J.A. 14 (record citations omitted). Put succinctly, the ALJ found that Halperin's scoliosis does not medically equal Listing 14.09C1 because she fails to satisfy (1) the criterion for Listing 14.09C1 requiring "fixation" of the spine and (2) the criterion in the introduction to Section 14.00 that she be unable to ambulate effectively.

Having concluded that Halperin was not disabled at step three, the ALJ continued to steps four and five of the disability evaluation. Though he found that Halperin could not perform any past relevant work, the ALJ nonetheless determined that Halperin could perform other jobs available in significant numbers in the national economy and therefore was not disabled.

Halperin sought judicial review in the Middle District of North Carolina, challenging the ALJ's finding at step three that her scoliosis does not equal Listing 14.09C1. *See* 42 U.S.C. § 405(g) (providing for judicial review). The district court adopted the magistrate judge's recommendation to affirm the ALJ's finding of no disability. Halperin now appeals.

II.

On appeal, Halperin challenges only the ALJ's determination that she failed to carry her burden at step three of demonstrating that her scoliosis equals a listed impairment. Had Halperin prevailed at step three, she would have been entitled to a conclusive presumption of disability. *See Radford*, 734 F.3d at 291; *see also* 20 C.F.R. § 404.1520(a)(4)(iii), (d). We will uphold the ALJ's disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); *see also Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("Under the Social Security Act, a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." (alterations and internal quotation marks omitted)).

Halperin argues the ALJ applied the wrong legal standard in two respects. First, she contends that the ALJ misinterpreted Listing 14.09C1's criterion requiring fixation of the spine to require forward rounding of the back. Second, she asserts that the ALJ erroneously required her to demonstrate inability to ambulate effectively based on the introduction to Section 14.00. We consider each argument in turn.

A.

Halperin primarily contends that the ALJ erroneously narrowed the meaning of "fixation" in Listing 14.09C1 to apply only to forward curvatures of the spine. Listing 14.09C1 requires "*[a]nkylosis (fixation) of the dorsolumbar or cervical spine as shown by* appropriate medically acceptable imaging." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09C1

8

(emphasis added). But as Halperin correctly notes, the ALJ stated that "Listing 14.09 focuses on *fixation (kyphosis)* and the claimant's medical records do not address this in enough detail for a medical equivalence finding." J.A. 14 (emphasis added). The ALJ reasoned that Halperin failed to prove fixation because her records indicated "'there was *some* upper lumbar kyphosis in the curvature,'" which "suggests that there was not fixation throughout the curve." *Id.* (quoting medical records). The ALJ thus operated under one of two assumptions: that "fixation" and "kyphosis" are synonymous or that the only "fixation" relevant to Listing 14.09C1 is "kyphosis." Both restrict Listing 14.09C1's fixation criterion in a manner the Listing does not support.

Listing 14.09C1 does indeed focus on fixation—or ankylosis—of the spine, but it does not limit the direction of the fixation for determining medical equivalence. "Ankylosis" refers to immobility and consolidation of a joint; by itself, it does not carry a directional component.[2] The specific conditions listed in 14.09C are "ankylosing spondylitis or other spondyloarthropathies." Ankylosing spondylitis is an inflammatory disease that can cause vertebrae to fuse, resulting in a hunched-forward posture.[3] Halperin does not claim to suffer from this condition. But the regulations elsewhere direct that three types of abnormal curvatures of the spine should be evaluated for medical equivalence by

---

[2] *Ankylosis*, Dorland's Illustrated Medical Dictionary (33d ed. 2020) (defining ankylosis as "immobility and consolidation of a joint due to disease, injury, or surgical procedure").

[3] *Ankylosing spondylitis*, https://www.mayoclinic.org/diseases-conditions/ankylosing-spondylitis/symptoms-causes/syc-20354808 (last visited Apr. 2, 2021).

9

reference to Listing 14.09C when their symptoms relate to fixation of the dorsolumbar or cervical spine: "scoliosis, kyphosis, and kyphoscoliosis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00L. Kyphosis "is an exaggerated, *forward* rounding of the back," known colloquially as "humpback."[4] Scoliosis, by contrast, "is a *sideways* curvature of the spine."[5] Halperin suffered from both. Indeed, the ALJ found that Halperin's sideways curve measurements exceeded that required by Listing 14.09C1. By equating fixation with kyphosis and rejecting Halperin's claim because she presented only "*some* upper lumbar kyphosis," the ALJ erroneously required proof of a forward curvature to establish fixation for medical equivalence. Listing 14.09C1 does not equate fixation and kyphosis in this manner. Such an interpretation directly conflicts with the regulation instructing that scoliosis, which is by definition a sideways curvature, can medically equal Listing 14.09C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00L.[6] The ALJ applied the wrong legal standard in evaluating fixation under Listing 14.09C1 for purposes of medical equivalence.

---

[4] *Kyphosis*, https://www.mayoclinic.org/diseases-conditions/kyphosis/symptoms-causes/syc-20374205 (emphasis added) (last visited Apr. 2, 2021).

[5] *Scoliosis*, https://www.mayoclinic.org/diseases-conditions/scoliosis/symptoms-causes/syc-20350716 (emphasis added) (last visited Apr. 2, 2021).

[6] As Halperin notes, the magistrate judge, in an opinion adopted by the district court, made a similar error by interpreting Listing 14.09C1's flexion criterion as requiring "forward-flexed posture" or "forward bowing or rounding." J.A. 50 & n.8. But we review the decision of the ALJ, not the district court. *See Hancock*, 667 F.3d at 472.

B.

The Commissioner argues that we nevertheless must affirm because the ALJ also denied Halperin's claim for failure to demonstrate an inability to ambulate effectively. Halperin counters that the ALJ erred by imposing such a requirement, which she asserts misinterprets the introduction to Section 14.00. Although Halperin's argument is not without force, we conclude that the ALJ did not err.

The parties agree that the introduction to Section 14.00 of Appendix 1 applies to Listing 14.09C. *See* 20 C.F.R. § 404.1525(c)(2) ("The introduction to each body system contains information relevant to the use of the listings in that body system . . . [and] may also include specific criteria for establishing a diagnosis, confirming the existence of an impairment, or establishing that your impairment(s) satisfies the criteria of a particular listing in the body system."). The relevant introductory paragraph states:

> Listing-level severity in 14.09A and 14.09C1 is shown by an impairment that results in an "extreme" (very serious) limitation. In 14.09A, the criterion is satisfied with persistent inflammation or deformity in one major peripheral weight-bearing joint resulting in the inability to ambulate effectively . . . . In 14.09C1, if you have the required ankylosis (fixation) of your cervical or dorsolumbar spine, we will find that you have an extreme limitation in your ability to see in front of you, above you, and to the side. Therefore, inability to ambulate effectively is implicit in 14.09C1, even though you might not require bilateral upper limb assistance.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00D6(e)(i). This paragraph elaborates the severity required to meet or equal Listing 14.09C1 and is therefore pertinent to the medical-equivalence determination. An impairment "is medically equivalent to a listed impairment in [A]ppendix 1 if it is *at least equal in severity* and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a) (emphasis added). And the criteria of a listed

11

impairment include all of the criteria of that listing as well as "any relevant criteria in the introduction." *Id.* § 404.1525(c)(3).

As the introductory paragraph makes clear, inability to ambulate effectively is implicit in the impairments described by Listing 14.09C1. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00D6(e)(i). This is so, the introduction explains, because a claimant suffering from ankylosing spondylitis or other spondyloarthropathies who has the required degree of fixation in her dorsolumbar or cervical spine will necessarily have an extreme limitation in her ability to see "in front of," "above," and "to the side" of herself. *Id.* Thus, to medically equal Listing 14.09C1, a claimant's impairment must be "at least of equal medical significance," 20 C.F.R. § 404.1526(b)(2), to a 45° fixed dorsolumbar or cervical spine condition that "extreme[ly] limit[s]" one's ability to see around oneself and therefore ambulate effectively, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00D6(e)(i).

Halperin argues that the introduction to Section 14.00 imposes no additional requirements on a claimant for meeting Listing 14.09C1 because if a claimant satisfies the listing's fixation and flexion criteria, the Administration "will find" that the claimant has an "extreme limitation" in her ability to see around herself and therefore ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00D6(e)(i). Halperin may be correct. In this respect, Listing 14.09C1's implicit finding contrasts with Listing 14.09A, in which inability to ambulate effectively is an explicit additional criterion. *See id.* § 14.09A1; *see also id.* § 14.00D6(e)(i). But even if an extreme limitation in the ability to see around oneself and therefore ambulate effectively is not an independent additional requirement for meeting Listing 14.09C1, the fact that it is implicit in those listed conditions informs the

12

severity of the limitation necessary for an unlisted impairment to medically equal that listing.

Recall that Halperin is not afflicted with "ankylosing spondylitis or other spondyloarthropathies," the specific conditions covered by Listing 14.09C1. *See supra* at 9 & n.3 (defining ankylosing spondylitis as an inflammatory disease that can cause vertebrae to fuse and result in a hunched-forward posture). So even though her dorsolumbar or cervical spine may be fixed[7] (in some fashion, in some direction, for some length) at 45° or more of flexion from the vertical position, it is nevertheless possible that her unlisted impairment is not "at least equal in severity" to the listed impairments. 20 C.F.R. § 404.1526(a). As the ALJ correctly stated, Listing 14.09 requires "more than just curve measurements." J.A. 14. The introduction explains that the listed impairments are so severe that they necessarily result in an extreme limitation in the ability to see around oneself such that inability to ambulate effectively is implicit in those conditions. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00D6(e)(i). To show that her unlisted impairment equals Listing 14.09C1, Halperin must prove that her "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." 20 C.F.R. § 404.1529(d)(3). She therefore must show that her scoliosis results in "an extreme limitation" in her ability to see around herself, resulting in an inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00D6(e)(i).

---

[7] The ALJ did not address, and we take no position on, whether Halperin demonstrated ankylosis of the dorsolumbar or cervical spine.

13

The ALJ determined that Halperin's scoliosis, for all the other difficulties it caused her, nonetheless left her able to ambulate effectively. She "did not demonstrate any gait disturbance until just before the surgery" to correct her curve, and "[e]ven then, she remained able to ambulate effectively." J.A. 14. Halperin does not contest the ALJ's factual finding in her briefs on appeal.[8] She instead argues in her reply brief that before surgery she experienced difficulty eating and breathing, which should be considered sufficiently extreme limitations. The regulations acknowledge that scoliosis may affect an individual's respiratory or other body systems, but in such a case medical equivalence should be evaluated according to Section 3.00, concerning respiratory disorders, or the listings for the other affected body systems. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00L. Halperin has pursued medical equivalence only to Listing 14.09C1, for which the required "extreme limitation" concerns an individual's ability to see around herself and thus ambulate effectively, not a limitation in eating or breathing. Because Halperin does not challenge the ALJ's factual determination in this regard, we need not consider whether substantial evidence supports his finding.

---

[8] At oral argument, Halperin's counsel asserted that Halperin was challenging the ALJ's factual determination that she can ambulate effectively. *See* Oral Arg. 5:00–6:05. That belated contention, however, cannot cure her failure to contest the issue in her briefs. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to 'develop its argument—even if its brief takes a passing shot at the issue.'" (alterations omitted) (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 932 (4th Cir. 2015))).

III.

We conclude that, although the ALJ applied an erroneous standard for fixation in Listing 14.09C1, he correctly required Halperin to demonstrate an extreme limitation in her ability to see around herself resulting in an inability to ambulate effectively. Because the ALJ found that Halperin did not satisfy this requirement and Halperin does not contest that finding on appeal, it is sufficient to sustain the ALJ's conclusion that Halperin is not entitled to a conclusive presumption of disability at step three of the five-step evaluation process. We therefore affirm the district court's judgment in favor of the Commissioner.

*AFFIRMED*